2007 ND 36

**RIVERWOOD COMMERCIAL PARK, L.L.C., and Tom S. Freidt, Plaintiffs and Appellants,**

v.

**STANDARD OIL COMPANY, INC., a/k/a BP, and Tesoro Refining and Marketing Company, Defendants and Appellees.**

No. 20060122.

Supreme Court of North Dakota.

March 5, 2007.

Chad C. Nodland (argued), Chad C. Nodland, P.C., Bismarck, N.D., for plaintiffs and appellants.

John C. Kapsner (argued) and Kari R. Reichert (appeared), Vogel Law Firm, Bismarck, N.D., for defendant and appellee Standard Oil Company, Inc.

Michael J. Geiermann (argued), Schulz Geiermann & Bergeson Law Offices, P.C., Bismarck, N.D., for defendant and appellee Tesoro Refining and Marketing Company.

MARING, Justice.

[¶ 1] Riverwood Commercial Park, LLC, and Tom Freidt (collectively "Riverwood") have appealed from a judgment dismissing their action against Standard Oil Company ("Standard") and Tesoro Refining and Marketing Company ("Tesoro") for trespass, breach of contract, slander of title, right to quiet title, interference with prospective advantage, fraud, and nuisance. We reverse, concluding (1) the district court erred in holding Riverwood's claims for slander of title, right to quiet title, interference with prospective advantage, fraud, and nuisance were barred by res judicata, collateral estoppel, and law of the case, and (2) the district court erred in dismissing with prejudice Riverwood's

claims for trespass and breach of contract for failure to join indispensable parties.

I

[¶ 2] We outlined the historical background of the parties' disputes in *Riverwood Commercial Park, LLC v. Standard Oil Co., Inc.*, 2005 ND 118, ¶¶ 2–3, 698 N.W.2d 478:

In 1953, Standard owned an oil refinery in Mandan, and the Northern Pacific Railway Company ("NP") owned land between the refinery and the Heart River. On March 23, 1953, NP executed a written permit granting Standard permission to "construct, operate, and maintain" a sewer pipeline along NP's right-of-way from the refinery to the Heart River. The permit provided that Standard could not transfer or assign the permit without NP's written consent. A twenty-two inch underground sewer pipeline, including a large manhole, was constructed across NP's property from the refinery several miles south to the Heart River.

In 1998, NP sold a portion of its property containing the sewer pipeline to Marmot Properties. Since 1953, Standard has gone through a series of name changes and eventually became British Petroleum ("BP"). In 2001, BP sold the Mandan refinery to Tesoro. On May 17, 2004, Tesoro filed a "Notice of Permit," with a copy of the 1953 permit attached, with the Morton County Recorder's Office. On June 15, 2004, Marmot Properties sold the property involved in this case, with the sewer pipeline running beneath it, to Riverwood.

[¶ 3] In August 2004, Riverwood brought a summary eviction action under N.D.C.C. ch. 33–06 against Standard and Tesoro, contending that the existence of the pipeline on its property constituted a

trespass.[1] Riverwood sought immediate removal of the pipeline, claiming its presence interfered with Riverwood's ability to develop and market its property. On Tesoro's motion for judgment on the pleadings under N.D.R.Civ.P. 12(b)(vi) for failure to state a claim upon which relief could be granted, the district court concluded that the 1953 permit did not create a lease and Standard and Tesoro did not have a possessory interest in the property, and eviction via the summary procedure under N.D.C.C. ch. 33–06 was therefore not available. Riverwood appealed from the judgment dismissing the eviction action and this Court affirmed, concluding the 1953 permit "at best" created a license or an easement, not a lease, and subsections (4), (7), and (8) of N.D.C.C. § 33–06–01, which specifically apply only to lessees, were inapplicable. *Riverwood*, 2005 ND 118, ¶¶ 10–11, 698 N.W.2d 478.

[¶ 4] While the appeal in Riverwood I was pending, Riverwood brought this action against Standard and Tesoro, alleging trespass, breach of contract, slander of title, right to quiet title, interference with prospective advantage, fraud, and nuisance. Standard and Tesoro moved to dismiss the complaint under N.D.R.Civ.P. 12(b)(vi) and (vii) for failure to state a claim upon which relief could be granted and failure to join indispensable parties under N.D.R.Civ.P. 19. Riverwood responded to the motions to dismiss and moved to amend the complaint to add a claim for exemplary damages. The district court dismissed the slander of title, right to quiet title, interference with prospective advantage, fraud, and nuisance claims, finding they were barred by res judicata, collateral estoppel, and law of the case. The court initially did not dismiss Riverwood's claims for trespass or breach of contract, expressly concluding they

were not barred by res judicata, collateral estoppel, or law of the case, but ordered that Burlington Northern Santa Fe Railroad (NP's successor) and Marmot Properties were indispensable parties and granted Riverwood fifteen days to join them as defendants. When Riverwood failed to join the additional parties, the district court ordered dismissal with prejudice of the trespass and breach of contract claims, and judgment was entered dismissing Riverwood's complaint in its entirety.

[¶ 5] Riverwood has appealed, arguing its claims in this case were not barred by the result in Riverwood I, it was not required to join additional parties, and the district court erred in failing to grant Riverwood's motion to amend the complaint to include a claim for exemplary damages.

II

[¶ 6] Our review of the judgment dismissing the complaint is complicated by the uncertain procedural posture of this case. Standard and Tesoro moved for judgment on the pleadings under N.D.R.Civ.P. 12(b)(vi) and (vii) for failure to state a claim upon which relief could be granted and failure to join indispensable parties. The parties thereafter presented to the district court evidentiary matters, including affidavits and documentary evidence, in support of their respective arguments. Rule 12(c), N.D.R.Civ.P., applies when matters outside the pleadings are presented to the court:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment

---

1. We will refer to the eviction action as Riverwood I.

and disposed of as provided in N.D.R.Civ.P. 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by N.D.R.Civ.P. 56.

[¶ 7] In this case, it is unclear whether the district court disposed of the motions under Rule 12 or Rule 56. Although the court did not expressly exclude the additional matters presented by the parties, the court did not reference any of those additional materials in its order granting the motion to dismiss. Nor did the court explain whether it was applying the standards governing judgment on the pleadings or the summary judgment standards in resolving the motions. The determination of which procedure the district court employed affects the applicable standards and the scope of our review on appeal.

[¶ 8] In *Kouba v. State*, 2004 ND 186, ¶¶ 4–6, 687 N.W.2d 466, we outlined the standards governing judgment on the pleadings under N.D.R.Civ.P. 12:

"A trial court's decision for granting judgment on the pleadings under Rule 12(c), N.D.R.Civ.P., is reviewed de novo." *Tibert v. Minto Grain*, 2004 ND 133, ¶ 6, 682 N.W.2d 294 . . . .

When our Court reviews the dismissal of a complaint after a judgment on the pleadings under Rule 12(c), N.D.R.Civ.P.,

we recognize that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The court's inquiry is directed to whether or not the allegations constitute a statement of a claim under Rule 8(a), N.D.R.Civ.P., which sets forth the requirements for pleading a claim and calls for a short and plain statement of the claim showing that the pleader is entitled to relief. The com-

plaint is to be construed in the light most favorable to the plaintiff, and the allegations of the complaint are taken as true. The motion for dismissal of the complaint should be granted only if it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted.

*Tibert*, 2004 ND 133, ¶ 7, 682 N.W.2d 294 (citation omitted).

A trial court's decision granting judgment of dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(vi), N.D.R.Civ.P., will be affirmed by our Court if we cannot "discern a potential for proof to support it." *Vandall v. Trinity Hospitals*, 2004 ND 47, ¶ 5, 676 N.W.2d 88 (quoting *Towne v. Dinius*, 1997 ND 125, ¶ 7, 565 N.W.2d 762).

[¶ 9] The standards governing summary judgment under N.D.R.Civ.P. 56, while similar to those for judgment on the pleadings, allow a somewhat broader procedure and review:

Summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. A party resisting a motion for summary judgment cannot merely rely on the pleadings or other unsupported conclusory allegations. A resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact. A district court's decision on a motion for

summary judgment is a question of law that we review de novo on the record. *Trinity Hosps. v. Mattson,* 2006 ND 231, ¶ 10, 723 N.W.2d 684 (citations omitted).

[¶ 10] Under the circumstances in this case, we find it unnecessary to determine whether the district court's decision was premised upon Rule 12 or Rule 56. Based upon our review of the substantive issues on the merits, we conclude that, applying either standard of review, the district court erred in dismissing Riverwood's claims against Standard and Tesoro.[2]

## III

[¶ 11] Riverwood contends the district court erred in concluding that its claims for slander of title, right to quiet title, interference with prospective advantage, fraud, and nuisance were barred by res judicata, collateral estoppel, and law of the case.

### A

[¶ 12] The district court's determination that Riverwood's claims were barred by the law of the case doctrine was erroneous. Under the law of the case doctrine, if an appellate court has ruled on a legal question and remanded the case to the lower court for further proceedings, the legal question thus determined becomes the law of the case and will not be differently determined on a subsequent appeal in the same case where the facts remain the same. *Peoples State Bank of Truman, Inc. v. Molstad Excavating, Inc.,* 2006 ND 183, ¶ 10, 721 N.W.2d 43; *Jundt v. Jurassic Res. Dev., N. Am., L.L.C.,* 2004 ND 65, ¶ 7, 677 N.W.2d 209; *Tom Beuchler Constr., Inc. v. City of Williston,* 413 N.W.2d 336, 339 (N.D.1987); *Poyzer v. Amenia Seed & Grain Co.,* 409 N.W.2d 107, 108–09 (N.D.1987). By its terms, the law of the case doctrine applies only in a subsequent appeal in the same case. *See Peoples State Bank,* at ¶ 10; *Jundt,* at ¶ 7; *Tom Beuchler Constr.,* at 339; 18 James W. Moore, Federal Practice §§ 131.13[3] and 134.20[1] (3d ed.2006). As explained in 18 Moore, *supra,* at § 131.13[3], "the law of the case doctrine operates only until a final judgment is obtained, after which it has no relevance." The doctrine does not apply to bar claims or issues in a subsequent, separate lawsuit.

### B

[¶ 13] Claim preclusion or issue preclusion in a subsequent action is governed by res judicata and collateral estoppel. We have explained the application of res judicata and collateral estoppel, noting the distinctions between the similar doctrines:

The doctrines of res judicata and collateral estoppel bar courts from relitigating claims and issues in order to promote the finality of judgments, which increases certainty, avoids multiple litigation, wasteful delay and expense, and ultimately conserves judicial resources. The applicability of res judicata or collateral estoppel is a question of law, fully reviewable on appeal.

"Although collateral estoppel is a branch of the broader law of res judicata, the doctrines are not the same." Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies. Thus, res judicata means a valid, existing final judgment from a court of

---

2. We strongly urge district courts, when presented with material outside the pleadings on a Rule 12 motion, to expressly state whether they are considering the additional materials and deciding the motion as one for summary judgment, or are excluding the additional matters and deciding the motion as one for judgment on the pleadings.

competent jurisdiction is conclusive with regard to claims raised, or those that could have been raised and determined, as to [the] parties and their privies in all other actions. Res judicata applies even if subsequent claims are based upon a different legal theory. Collateral estoppel, or issue preclusion, forecloses relitigation of issues of either fact or law in a second action based on a different claim, which were necessarily litigated, or by logical and necessary implication must have been litigated, and decided in the prior action.

*Ungar v. North Dakota State Univ.*, 2006 ND 185, ¶¶ 10–11, 721 N.W.2d 16 (citations omitted); *see Witzke v. City of Bismarck*, 2006 ND 160, ¶ 8, 718 N.W.2d 586; *Simpson v. Chicago Pneumatic Tool Co.*, 2005 ND 55, ¶ 8, 693 N.W.2d 612; *Cridland v. North Dakota Workers Comp. Bureau*, 1997 ND 223, ¶¶ 14 and 17, 571 N.W.2d 351.

■ [¶ 14] The primary differences between res judicata claim preclusion and collateral estoppel issue preclusion are summarized in 18 Moore, *supra*, § 131.13[1] (footnotes omitted):

The basic difference between claim preclusion and issue preclusion is simply put: claim preclusion applies to whole claims, whether litigated or not, whereas issue preclusion applies to particular issues that have been contested and resolved. Claim preclusion is broader in scope than issue preclusion as to the claims that come within its purview, but narrower in scope as to the parties to whom the doctrine can be applied. While claim preclusion and issue preclusion advance the same basic principle—the need for finality in judicial proceedings—they do so in substantially different ways. Claim preclusion prevents parties and those in privity with them from raising legal theories, claims for

relief, or defenses which could have been raised in the prior litigation, even though such claims were never actually litigated in the prior case. Issue preclusion, on the other hand, precludes litigation of issues actually litigated and necessary to the outcome of the prior case, even if such issues are subsequently presented as part of a different "claim."

In analyzing these issues, we keep in mind the admonition that the doctrines should apply as fairness and justice require, and should not be applied so rigidly as to defeat the ends of justice or to work an injustice. *See Wetch v. Wetch*, 539 N.W.2d 309, 312 (N.D.1995); *Hofsommer*, 488 N.W.2d at 383; *Borsheim v. O & J Props.*, 481 N.W.2d 590, 597 (N.D.1992).

## C

■■ [¶ 15] Standard and Tesoro argue that Riverwood's claims in this action are barred by res judicata. As previously noted, res judicata claim preclusion prevents relitigation of claims that were raised or could have been raised in a prior action between the same parties. *See, e.g., Ungar*, 2006 ND 185, ¶ 11, 721 N.W.2d 16. The doctrine is premised in part upon the prohibition against splitting a cause of action. *See Borsheim*, 481 N.W.2d at 597; 18 Moore, *supra*, at § 131.20[1].

[¶ 16] Standard and Tesoro's contention that Riverwood could have brought all of its claims in Riverwood I wholly ignores the statutory procedures and mandates for a summary eviction action. An eviction action under N.D.C.C. ch. 33–06 is a summary proceeding to recover possession of real estate. *Riverwood*, 2005 ND 118, ¶ 6, 698 N.W.2d 478; *H–T Enters. v. Antelope Creek Bison Ranch*, 2005 ND 71, ¶ 6, 694 N.W.2d 691. Section 33–06–04, N.D.C.C., expressly prohibits a plaintiff from combining the eviction action with other

claims. We explained the procedure in *Riverwood*, at ¶ 6 (citations omitted):

Section 33–06–02, N.D.C.C., provides for an expedited procedure, with the defendant allowed between three and fifteen days to appear and defend in the action. If the court finds for the plaintiff, the court must enter judgment granting immediate restitution of the premises to the plaintiff, but the court may delay execution in case of hardship for a reasonable period not exceeding five days. N.D.C.C. § 33–06–04. The statute strictly limits the parties' ability to combine the eviction with other claims and precludes the defendant from interposing a counterclaim, except as a setoff to the plaintiff's claim for damages, rent, or profits. N.D.C.C. § 33–06–04. The proceeding is limited to a speedy determination of the right to possession of the property, without bringing in extraneous matters. The purpose of the statute is to provide an inexpensive, expeditious, and simple means to determine possession.

■ [¶ 17] It is axiomatic that res judicata claim preclusion and rules against splitting a cause of action are inapplicable when a statute explicitly prohibits inclusion of additional claims in the original action. Our statutory scheme under N.D.C.C. ch. 33–06 envisions an expedited summary procedure to quickly restore possession of the property to the owner, without jeopardizing the owner's right to bring subsequent claims resulting from the unlawful encroachment upon the property. The result urged by Standard and Tesoro would force a property owner who uses the summary eviction procedure to expeditiously secure its rightful repossession of the property to entirely forego any right to seek other relief or redress for the defendant's unlawful retention of the property. We will not interpret the doctrine of res

judicata in a manner which would work such an injustice. *See, e.g., Wetch,* 539 N.W.2d at 312. We foreshadowed this result in *Riverwood,* 2005 ND 118, ¶ 12, 698 N.W.2d 478, when we noted that Riverwood had other potential claims and remedies against Standard and Tesoro.

■ [¶ 18] Under res judicata claim preclusion, a judgment in a prior action is conclusive "as to all claims which, *under the rules,* might have been put in issue in the prior trial." *Borsheim,* 481 N.W.2d at 596 (emphasis added) (quoting *Perdue v. Knudson,* 179 N.W.2d 416, 421 (N.D. 1970)). Riverwood was expressly prohibited by statute from pleading its claims for slander of title, right to quiet title, interference with prospective advantage, fraud, and nuisance in the prior action. Accordingly, those claims are not barred by res judicata claim preclusion.

D

■ [¶ 19] Standard and Tesoro argue that Riverwood's claims are barred by the doctrine of collateral estoppel. They contend the district court in Riverwood I found that the 1953 permit created a license to maintain the pipeline on the property and that the license remained in effect and was still valid. They also contend this Court did not reverse that finding on appeal, and Riverwood is therefore precluded from now basing any claim on Standard and Tesoro's presence on the property. Standard and Tesoro's arguments are premised upon a misperception of the procedures and result in Riverwood I and upon an erroneous view of the legal standards governing application of collateral estoppel issue preclusion.

■ [¶ 20] Collateral estoppel bars relitigation of issues which were necessarily litigated and decided, or which by implication must have been litigated and decided, in a prior action. *E.g., Ungar,*

2006 ND 185, ¶ 11, 721 N.W.2d 16; *Witzke,* 2006 ND 160, ¶ 8, 718 N.W.2d 586. Collateral estoppel does not apply to dicta, but applies only if the determination of the issue in the prior action was necessary and essential to support the judgment. 18 Moore, *supra,* at § 132.03[4][a] and [f]. The doctrine "does not apply to matters which are incidental or collateral to the determination of the main controversy." *Martin v. Rath,* 1999 ND 31, ¶ 8, 589 N.W.2d 896.[3]

■ [¶ 21] In analyzing whether an issue was "necessarily decided" in the prior case, collateral estoppel issue preclusion may only be applied if "the determination of the former action could not have been made without determining" the issue in question. *Knutson v. Ekren,* 72 N.D. 118, 125, 5 N.W.2d 74, 78 (1942). The "necessarily decided" requirement is summarized in 18 Moore, *supra,* at § 132.03[4][a] (footnotes omitted):

Issue preclusion operates to preclude the relitigation of only those issues necessary to support the judgment entered in the first action. Relitigation of an issue presented and decided in a prior case is therefore not foreclosed if the decision of the issue was not necessary to the judgment reached in the prior litigation. . . .

For issue preclusion to apply, the issue must have been actually litigated and have been essential to the prior decision. Judgment in the prior action must therefore have been dependent on the determination made of the issue in question. When the jury or the court makes findings of fact, but the judgment is not dependent on those findings, they are not conclusive between the parties in

a subsequent action based on a different cause of action.

The purpose of the "necessarily decided" requirement "is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation." *Id.,* at § 132.03[4][f].

[¶ 22] In urging application of the doctrine of collateral estoppel in this case, Standard and Tesoro rely upon language in the district court's opinion in Riverwood I suggesting that the 1953 permit was a license between Standard and NP which had never been revoked and was still in effect. Throughout their briefs on appeal, Standard and Tesoro refer to this as a "finding of fact" by the district court which was not disturbed by this Court on the appeal in Riverwood I.

■ [¶ 23] Riverwood I was decided in the context of a motion under N.D.R.Civ.P. 12(b)(vi) for judgment on the pleadings for failure to state a claim upon which relief could be granted. The court was therefore required to construe the complaint in the light most favorable to the plaintiff and accept as true all allegations in the complaint. *E.g., Kouba v. State,* 2004 ND 186, ¶ 5, 687 N.W.2d 466; *Tibert v. Minto Grain, LLC,* 2004 ND 133, ¶ 7, 682 N.W.2d 294. On a motion for judgment on the pleadings, the district court may not resolve disputed issues of fact or make findings of fact. The precise nature of the interest created by the 1953 permit and its continued validity were disputed issues of fact in Riverwood I. If the district court had resolved disputed factual issues and made a finding that the permit created a license which was still in effect, and if such a finding had been necessary and essential to the judgment dismissing the

---

**3.** Although the Court in *Martin* used the term "res judicata," it is clear from the context of the case that the Court was applying the doctrine of issue preclusion, which we now denominate as collateral estoppel.

eviction action, we would have had to reverse the judgment in Riverwood I on that basis as well.

[¶ 24] The district court's language in Riverwood I must be viewed in context. Standard had moved for judgment on the pleadings, arguing that the 1953 permit created a license, not a lease, and that the eviction statute applied only if there was a lease. The district court, quoting definitions of "license" and "lease," concluded that, as a matter of law, the permit did not create a lease and the eviction statute did not apply. The court's further characterization of the permit as a license, and its suggestion that the license remained in effect, was not necessary or essential to the judgment.

[¶ 25] Our opinion in Riverwood I bears out this interpretation of the district court's opinion. We were careful to avoid any reliance upon the precise nature of the interest created by the 1953 permit or upon its continued validity. In essence, the dispositive issue in Riverwood I was not what the permit *was*, but rather what it *was not*. If it was not a lease, the eviction statute did not apply and it was wholly irrelevant whether the permit created a license or whether such a license was still valid. *See* N.D.C.C. § 33–06–01(4), (7), and (8). On appeal, we clearly indicated we were not relying upon a finding that a valid license existed when we held that the eviction statute would only apply if the 1953 permit created a lease, but "[t]he 1953 permit created, *at best,* a license or easement, not a lease." *Riverwood,* 2005 ND 118, ¶ 10, 698 N.W.2d 478 (emphasis added).

[¶ 26] Even if the district court could have made findings of fact, this Court has held that a trial court's finding of fact which is not passed upon by the appellate court because it is not necessary for the appellate court's decision does not render that finding conclusive between the parties in a subsequent action. *Poyzer v. Amenia Seed & Grain Co.,* 409 N.W.2d 107, 108 (N.D.1987); *Nodland v. Nokota Co.,* 314 N.W.2d 89, 92 (N.D.1981).[4] In Riverwood I, we did not pass upon nor rely upon any finding of fact that the 1953 permit created a license which was still valid. Any such finding was not necessary or essential to the district court's judgment or to our resolution of the appeal in Riverwood I, and collateral estoppel issue preclusion therefore does not apply. Accordingly, the district court's alleged "finding" that the 1953 permit created a license which was still valid does not preclude litigation of that issue in this case.

E

[¶ 27] We conclude the district court erred in holding that Riverwood's claims for slander of title, right to quiet title, interference with prospective advantage, fraud, and nuisance were barred by res judicata, collateral estoppel, or law of the case.

IV

[¶ 28] In ruling on Standard and Tesoro's motions to dismiss under N.D.R.Civ.P. 12, the district court expressly concluded that Riverwood's claims for trespass and breach of contract were not precluded by res judicata, collateral estoppel, or law of the case, and the court therefore refused to dismiss those claims. The court further concluded, however, that Burlington Northern Santa Fe Railroad ("BNSF") and Marmot Properties ("Marmot") were indispensable parties to those claims under N.D.R.Civ.P. 19(a) and grant-

---

4. Although the Court in *Poyzer* and *Nodland* used the term "res judicata," it is clear from the context of the cases that the Court was applying collateral estoppel issue preclusion.

ed Riverwood fifteen days from the date of the court's order to join BNSF and Marmot as defendants. When Riverwood failed to join BNSF and Marmot as parties, the district court ordered that Riverwood's trespass and breach of contract claims be dismissed with prejudice, and a judgment dismissing the entire complaint with prejudice was entered.

[¶ 29] Riverwood contends BNSF and Marmot were not indispensable parties and Standard and Tesoro should have been required to bring a third party action if they believed BNSF and Marmot had interests which might be affected by the lawsuit. Standard and Tesoro argue that BNSF and Marmot were indispensable parties and the district court did not err in ordering dismissal of the complaint in its entirety with prejudice when Riverwood failed to join them as defendants. We find it unnecessary to address whether BNSF and Marmot were indispensable parties under N.D.R.Civ.P. 19(a) because we conclude that, even if BNSF and Marmot were indispensable parties to Riverwood's trespass and breach of contract claims, the district court was not authorized to order dismissal of Riverwood's claims with prejudice for failure to join them.

[¶ 30] Involuntary dismissal of an action is governed by N.D.R.Civ.P. 41(b):

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

[¶ 31] This Court, construing Rules 19 and 41(b), has expressly held that "when a dismissal is granted based upon ... failure to join a party under Rule 19, the dismissal does not operate as an adjudication on the merits and cannot be granted with prejudice." *Associated Gen. Contractors of North Dakota v. Local No. 580 of Laborers Int'l Union of N. Am.*, 278 N.W.2d 393, 400 (N.D.1979); *see also Johnson v. Boyd–Richardson Co.*, 650 F.2d 147, 148–49 (8th Cir.1981); *Transit Cas. Co. v. Security Trust Co.*, 396 F.2d 803 (5th Cir.1968); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 2d § 2373 (1995). The rationale for requiring that a dismissal for failure to join a party under Rule 19 be without prejudice was thoughtfully explained in *Bonneville Tower Condo. Mgmt. Comm. v. Thompson Michie Assocs., Inc.*, 728 P.2d 1017, 1020 (Utah 1986) (citations omitted):

Dismissal with prejudice under Rule 41(b) is a harsh and permanent remedy when it precludes a presentation of a plaintiff's claims on their merits. Our rules of procedure are intended to encourage the adjudication of disputes on their merits.

Dismissal for failure to join an indispensable party is only an abatement of that particular action and does not bar an action on the merits. Plaintiff's failure to bring all parties before the court prevents it from properly reaching the merits of plaintiff's claim. The deficiency may be overcome by joining the party required or by asserting only those alternative claims for relief that do not require the presence of other parties. If the appropriate amendment is not made, the action is subject to dismissal, but not with prejudice, because the defense operates only to abate the particular action being dismissed.

Referring to its Federal Rules of Civil Procedure, the United States Supreme Court has stated that Rule 41(b) is not

intended to change the common law principles with respect to dismissals in which the merits cannot be reached for failure of the plaintiff to satisfy a precondition requisite to consideration of the merits. *Costello v. United States,* 365 U.S. 265, 285–87, 81 S.Ct. 534, 544–46, 5 L.Ed.2d 551 (1961). We find nothing in the record below that would support any exception to the principle stated in *Costello* or to the intent of Rule 41(b) by imposing the drastic remedy of dismissal with prejudice in this case. The lower court's reason for dismissal was plaintiff's failure to join indispensable parties defendant. No other basis for dismissal was given. Under Utah Rule of Civil Procedure 41(b), a dismissal for failure to comply with Rule 19(a) is not an adjudication on the merits. Not having considered the merits of plaintiff's claims, there was no reason for the court to dismiss with prejudice and prevent future consideration .of the claims should the defect be corrected.

[¶ 32] We agree that a dismissal for failure to join a party under N.D.R.Civ.P. 19 is not an adjudication on the merits, and the district court erred in ordering dismissal of Riverwood's claims with prejudice.

## V

[¶ 33] Riverwood contends the district court committed reversible error by failing to grant its motion to amend the complaint to seek exemplary damages. Under N.D.C.C. § 32–03.2–11(1), a plaintiff may not seek exemplary damages in its initial complaint, but must subsequently move the court to allow amendment of the complaint to seek exemplary damages:

In any action for the breach of an obligation not arising from contract, when the defendant has been guilty by clear and convincing evidence of oppression, fraud, or actual malice, the court or jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant. Upon commencement of the action, the complaint may not seek exemplary damages. After filing the suit, a party may make a motion to amend the pleadings to claim exemplary damages. The motion must allege an applicable legal basis for awarding exemplary damages and must be accompanied by one or more affidavits or deposition testimony showing the factual basis for the claim. The party opposing the motion may respond with affidavit or deposition testimony. If the court finds, after considering all submitted evidence, that there is sufficient evidence to support a finding by the trier of fact that a preponderance of the evidence proves oppression, fraud, or actual malice, the court shall grant the moving party permission to amend the pleadings to claim exemplary damages. For purposes of tolling the statute of limitations, pleadings amended under this section relate back to the time the action was commenced.

[¶ 34] In this case, Riverwood moved to amend its complaint to seek exemplary damages after Standard and Tesoro had moved for judgment on the pleadings. The district court ultimately ordered entry of judgment dismissing Riverwood's complaint without ruling on the motion to amend the complaint. Because we are reversing the judgment dismissing Riverwood's complaint, we direct the district court on remand to consider and determine Riverwood's motion to amend the complaint to seek exemplary damages.

## VI

[¶ 35] The judgment dismissing the complaint is reversed, and we remand for

further proceedings consistent with this opinion.

[¶ 36] GERALD W. VANDE WALLE, C.J., and ALLAN L. SCHMALENBERGER, D.J., we concur in the result. DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.

[¶ 37] The Honorable ALLAN L. SCHMALENBERGER, D.J., sitting in place of KAPSNER, J., disqualified.