2005 ND 55

**Stephen SIMPSON and Sheri Simpson, Plaintiffs and Appellants,**

v.

**CHICAGO PNEUMATIC TOOL COMPANY, Johnson & Bell, Ltd., William Johnson, Dennis C. Cusack and Jerome C. Kettleson, Defendants and Appellees,**

**Robert V. Bolinske, Sr. and Charles T. Edin, Appellants.**

No. 20040133.

Supreme Court of North Dakota.

March 8, 2005.

Rehearing Denied April 13, 2005.

Robert V. Bolinske, Bismarck, N.D., for appellants.

John C. Kapsner, Vogel Law Firm, Bismarck, N.D., for defendants and appellees.

NEUMANN, Justice.

[¶ 1] Stephen and Sheri Simpson, together with their attorneys, Robert V. Bolinske, Sr., and Charles T. Edin, appealed from a judgment dismissing the Simpsons' claims against Chicago Pneumatic Tool Company, Johnson & Bell, Ltd., William Johnson, Dennis C. Cusack and Jerome C. Kettleson, denying their motion to compel, and awarding the defendants $17,098.42 in attorney fees, costs and disbursements as a sanction for violating N.D.R.Civ.P. 11(b). We conclude the district court did not err in denying the Simpsons' motion to compel or in granting summary judgment dismissal of their action on the grounds of res judicata and collateral estoppel. We further conclude the court did not err in determining the Simpsons' lawsuit was frivolous and imposing monetary sanctions. However, we conclude the court erred in holding the Simpsons jointly and severally liable with their attorneys for Rule 11 monetary sanctions. We affirm in part and reverse in part.

I

[¶ 2] In 1996, the Simpsons sued Chicago Pneumatic and others alleging Chicago Pneumatic negligently manufactured pneumatic air tools that were used by Stephen Simpson at his employment, the pneumatic air tools were defective and unreasonably dangerous for the user, and Stephen Simpson suffered serious injury while using the tools. During pretrial discovery, the Simpsons asked Chicago Pneumatic to produce any photographs and video recordings related to the case. Chicago Pneumatic answered that it had taken surveillance videos of Stephen Simpson and all of the photographs and video recordings had been disclosed. A surveillance videotape was introduced into evidence during the trial. In April 2000, a jury found Chicago Pneumatic was not negligent, the pneumatic air tools were not defective and unreasonably dangerous, and the tools did not cause Stephen Simpson's injuries.

[¶ 3] After the trial, the Simpsons moved to depose Thomas Twist, the investigator who took the surveillance videotape, and moved for a new trial because they did not believe Chicago Pneumatic had disclosed all of the surveillance videotape. Twist testified the videotape provided to the Simpsons during discovery and introduced at trial did not include all of the videotape he had taken, but Stephen Simpson was not on any of the videotape that had not been provided to the Simpsons. The Simpsons moved to compel production of all the original videotapes taken by Twist. The district court denied the motion to compel and the motion for new trial. In *Simpson v. Chicago Pneumatic Tool Co.*, 2003 ND 31, ¶¶ 1, 11, 657 N.W.2d 261, we affirmed, concluding the district court did not abuse its discretion in denying the post-trial motions.

[¶ 4] In May 2003, about two months after the *Simpson* decision was filed, the Simpsons brought this action against Chicago Pneumatic and the attorneys who

represented the company in the previous action. The Simpsons again alleged that Chicago Pneumatic "tools were defective and caused plaintiff Stephen Simpson serious and disabling injuries," and the defendants "failed to in fact produce all surveillance videotape plaintiffs were entitled to receive." The Simpsons alleged the defendants' conduct violated the North Dakota Rules of Civil Procedure relating to the discovery process, violated the North Dakota Rules of Professional Conduct, violated the due process clauses of the federal and state constitutions, and constituted obstruction of justice, fraud, concealment of evidence, abuse of process, negligent or intentional infliction of emotional distress, and tortious outrage. The Simpsons sought actual and punitive damages as well as an order compelling disclosure of all of the original surveillance videotape in the underlying litigation. The defendants moved to dismiss the complaint under N.D.R.Civ.P. 12(b)(vi), or in the alternative, for summary judgment under N.D.R.Civ.P. 56. The defendants also sought sanctions against the Simpsons and their attorneys under N.D.C.C. § 28–26–01 and N.D.R.Civ.P. 11 for filing a frivolous complaint.

[¶ 5] The district court treated the defendants' motion as a motion for summary judgment, dismissed the Simpsons' claims, and denied the motion to compel. The court ruled that principles of res judicata and collateral estoppel barred the action because the "claims relating to the alleged failure of the defendants to disclose certain surveillance video tapes were raised and then addressed by the trial court in *Simpson* ... both through the plaintiffs' motion for a new trial and the plaintiffs' motion to compel post-trial discovery. They were the same claims plaintiffs now present in this action." The court also found the Simpsons' claims were frivolous and imposed "Rule 11 sanctions" against

the Simpsons and their counsel, "jointly and severally," for $16,433 in attorney fees and $665.42 in costs and disbursements.

## II

[¶ 6] On appeal, the Simpsons and their attorneys argue the district court erred in denying their motion to compel and in granting summary judgment dismissal of their claim of fraudulent concealment and misrepresentation against the defendants on the grounds of res judicata and collateral estoppel.

[¶ 7] Our standard of review for the grant of summary judgment is well-established. In *Charles McCauley P'ship, L.L.L.P. v. Tyrone Township*, 2004 ND 214, ¶ 3, 689 N.W.2d 410 (quoting *Zuger v. State*, 2004 ND 16, ¶ 7, 673 N.W.2d 615 (citations and internal quotations omitted)), we said:

> Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. Whether summary judgment was properly granted is a question of law which we review de novo on the entire record. On appeal, this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.

[¶ 8] Through the doctrines of res judicata and collateral estoppel, courts bar relitigation of claims and issues to

promote the finality of judgments, which increases certainty, discourages multiple litigation, wards off wasteful delay and expense, and conserves judicial resources. *Riemers v. Peters–Riemers*, 2004 ND 153, ¶ 9, 684 N.W.2d 619. In *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 383 (N.D.1992) (internal citations omitted), this Court explained:

> Although collateral estoppel is a branch of the broader law of res judicata, the doctrines are not the same. Res judicata, or claim preclusion, is the more sweeping doctrine that prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which was resolved by final judgment in a court of competent jurisdiction. On the other hand, collateral estoppel, or issue preclusion, generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit.

For purposes of both res judicata and collateral estoppel, only parties or their privies may take advantage of or be bound by a former judgment. *Id.* at 384. Privity exists if a person is " 'so identified in interest with another that he represents the same legal right.' " *Id.* (quoting 46 Am. Jur.2d *Judgments* § 532, at p. 683 (1969) (footnote omitted)). The applicability of res judicata or collateral estoppel is a question of law fully reviewable on appeal. *Hofsommer*, at 383.

■ [¶ 9] The factual allegations the Simpsons rely upon to establish their claim in this case are identical to the factual allegations they had unsuccessfully litigated in *Simpson*. The Simpsons allege Chicago Pneumatic's tools were defective and caused Stephen Simpson serious and disabling injuries, directly contrary to the jury's findings in *Simpson*, 2003 ND 31, ¶ 2, 657 N.W.2d 261. The Simpsons again allege that the defendants failed to produce all of the surveillance videotape they were required to produce under the district court's discovery order in the prior proceeding, and rely on the same deposition testimony of Twist that was presented to the court in the prior proceeding to support their claim. One of the reasons given by the district court for denying the motion to compel and motion for new trial in *Simpson*, at ¶ 11, which was affirmed by this Court, was that Chicago Pneumatic had complied with the court's discovery order:

> [F]irst of all, I want to say that, again we might be getting into a semantic argument, but it's my opinion that [Chicago Pneumatic] complied with the Court's order as the Court wrote the order, and maybe I should have been less specific in the order and just should have said give them all the video tapes and let them decide. But the order did say relevant or related, I don't know the exact wording, but having to do with Stephen Simpson, and I think a logic common sense reading of that is that if tapes showed Mr. Simpson that they should be turned over, and reading Mr. Twist's deposition, I don't believe that there's any evidence that—tapes that showed Mr. Simpson exists that have been concealed or withheld from [Simpsons].

■ [¶ 10] The only difference between this case and *Simpson* is the addition of Chicago Pneumatic's attorneys as defendants and the alternative theories pled to justify recovery. This Court has adopted a somewhat "expanded" version of the concept of privity regarding res judicata and collateral estoppel. *Hofsommer*, 488 N.W.2d at 384. Here, the alleged

wrongful conduct of the defendants involves the attorneys' response on behalf of their client to discovery requests and orders. Under these circumstances, privity exists between Chicago Pneumatic and its attorneys in the underlying action for purposes of res judicata and collateral estoppel. *See, e.g., Geringer v. Union Elec. Co.,* 731 S.W.2d 859, 866 (Mo.App.1987) (law firm which represented client in underlying action was in privity with client in the prior adjudication and could assert collateral estoppel as bar to relitigation of issue resolved in previous lawsuit); *Merchants State Bank v. Light,* 458 N.W.2d 792, 794 (S.D.1990) (lawyer who prosecuted and directed prior litigation was in privity with client for purposes of res judicata); 47 Am.Jur.2d *Judgments* § 691 (1995), and cases collected therein.

■ [¶ 11] Although the Simpsons raise different theories of recovery in this case, res judicata and collateral estoppel apply even though the subsequent claims may be based upon a different legal theory. *See Littlefield v. Union State Bank,* 500 N.W.2d 881, 884 (N.D.1993). As the court explained in *Morgan Consultants v. American Tel. and Tel. Co.,* 546 F.Supp. 844, 848 (S.D.N.Y.1982):

> The mere fact that plaintiffs have conceived some new legal theories in which to clothe the same facts and events that gave rise to the first two actions will not affect the *res judicata* question. It is "the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

The Simpsons' addition of Chicago Pneumatic's attorneys as defendants and their reliance on different legal theories do not make the doctrines of res judicata and collateral estoppel inapplicable.

[¶ 12] We realize that some courts have recognized the availability of a tort action to remedy spoliation of evidence. *See, e.g., Rosenblit v. Zimmerman,* 166 N.J. 391, 766 A.2d 749, 754–59 (2001); Annot., *Intentional spoliation of evidence, interfering with prospective civil action, as actionable,* 70 A.L.R.4th 984 (1989). We need not reach that issue in this case. None of the cases we have reviewed suggest that a party who has lost a discovery dispute in a prior legal action has any cause of action against the opposing party based on the same evidence that was considered and rejected by the court in the previous action.

[¶ 13] We conclude the district court correctly determined the Simpsons' action is barred by principles of res judicata and collateral estoppel. The court did not err in granting summary judgment dismissal of the Simpsons' claims or in denying their motion to compel.

### III

[¶ 14] The Simpsons and their attorneys argue the district court erred in imposing sanctions.

[¶ 15] The basis for the court's award of sanctions is unclear. In the defendants' answer, they requested attorney fees, costs and disbursements against the Simpsons and their attorneys under N.D.C.C. §§ 28–26–01 and 28–26–31, and N.D.R.Civ.P. 11. The defendants followed with a "Motion for Rule 11 Sanctions" and a "Brief in Support of Rule 11 Sanctions" in which they contended the Simpsons' complaint violated "the provisions of Rule 11(b)(1),(2), and (3), N.D.R.Civ.P." These documents were accompanied with a "Safe Harbor Notice to Seek Rule 11 Sanctions" to the Simpsons giving them 21 days to withdraw the summons and complaint. On

December 29, 2003, the district court issued an interlocutory order imposing sanctions under N.D.R.Civ.P. 11, but postponing issuance of a final order until the court could determine whether the attorney fees and expenses claimed were reasonable. Also on December 29, 2003, the court issued an interlocutory memorandum decision granting the motions for summary judgment and for attorney fees, in which the court analyzed the propriety of sanctions under both N.D.C.C. § 28–26–01 and N.D.R.Civ.P. 11. On March 1, 2004, the court issued an interlocutory memorandum opinion and order modifying the order for judgment in which both N.D.C.C. § 28–26–01 and N.D.R.Civ.P. 11 are discussed. The final judgment, entered on March 11, 2004, dismissed the action and imposed "Rule 11 sanctions" against the Simpsons and their attorneys in the amount of $17,098.42. Because the safe harbor notice was given under N.D.R.Civ.P. 11, Rule 11 appears to have been the major focus of the defendants' requests for sanctions, and the final judgment refers only to sanctions imposed under Rule 11, we conclude the court assessed Rule 11 sanctions, rather than sanctions under N.D.C.C. § 28–26–01, against the Simpsons and their attorneys.

[¶ 16] Under N.D.R.Civ.P. 11, a district court must award sanctions against an attorney, or a represented party, or both, if the requirements of the rule are violated by them. *Dietz v. Kautzman,* 2004 ND 119, ¶ 14, 681 N.W.2d 437. We will not disturb a district court's determination regarding a request for sanctions under Rule 11 unless the court has abused its discretion. *Id.* at ¶ 15. If there are any factual determinations relevant to the sanction issue, we review the district court's findings under a clearly erroneous standard. *Id.*

[¶ 17] In deciding sanctions were appropriate, the district court reasoned:

As noted under Rule 11(b), an attorney by presenting a pleading to a court represents that to the best of their knowledge, information and belief formed after an inquiry reasonable under the circumstances that among other things the allegations and other factual contentions have evidentiary support or are likely to after further investigation. [ ]Rule 11(b)(3)[.] In addition, the attorney represents that the claims and other legal contentions are warranted by existing law or by non-frivolous argument for the extension, modification, or reversal of existing law. Rule 11(b)(2). These requirement[s] are absent in the key allegations of the plaintiffs['] complaint.

As noted in this trial court's summary judgment memoranda decision, Paragraph IV of the plaintiffs['] complaint is totally contrary to the special verdict handed down by the jury in *Simpson.* ... The jury found that Chicago Pneumatic was not negligent and that their tools were not defective or unreasonably dangerous and did not cause Simpson's injury.... Attorney Bolinske was the primary attorney in that action. Notwithstanding this judicial determination and result, he still alleges on behalf of his client[s] the opposite.

Likewise, in Paragraphs V, VI and VII of the plaintiffs['] complaint signed by Attorney Bolinske he alleges that the defendants failed to produce certain surveillance video tape *as required.* However, in *Simpson* ... that issue was previously raised by the plaintiffs before the trial court and as a post trial motion for a new trial and post trial motion to compel discovery.... Contrary and opposite to the allegations of Attorney Bolinske in these three paragraphs of the new complaint, the trial court determined that the defendants had not failed to disclose any video tape required un-

der the court[']s earlier discovery order.... The Supreme Court of North Dakota affirmed this decision by the trial court relating to discovery.... Consequently, these allegations under paragraphs IV through VII inclusive of the new complaint lack evidentiary support and constitute claims and other legal contentions not warranted by existing law, including the law of the case. This trial court agrees with the defendants['] legal assertion that the doctrine of privity and the principles of *Res Judicata* preclude these new claims for those reasons and for reasons that they are inconsistent with Rule 11(b)(2) and (3).

In addition to those reasons, the plaintiffs have raised claims that have no basis in law.... For example, a per se violation of an ethical duty and of Rules of Civil Procedure do not create a cause of action against an adversary attorney. There is no available claim as a civil action for obstruction of justice. There is no basis for a due process claim. Because the defendants and their attorneys were within the bounds of the discovery orders imposed on them in the earlier *Simpson* [case] there are no legitimate facts alleged to support their claim of abuse of process.

[¶ 18]   Although attorney Edin had not signed the complaint, the court imposed the Rule 11 sanctions against Edin as well, noting his name listed as an attorney at law was placed immediately below Bolinske's name and "Edin notarized the affidavit of service by mail of the complaint and summons thereby evidencing his knowledge of the documents served." The propriety of imposing Rule 11 sanctions against Edin has not been raised as an issue on appeal.

[¶ 19]   We conclude the district court's findings are not clearly erroneous and the court did not abuse its discretion in imposing sanctions in this case. However, under N.D.R.Civ.P. 11(c)(2)(a), "[m]onetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)." The district court found N.D.R.Civ.P. 11(b)(2) had been violated. Consequently, it was impermissible for the court to hold the Simpsons jointly and severally liable with their attorneys for the monetary sanctions, and we reverse that part of the judgment.

IV

[¶ 20]   The judgment is affirmed, except for that part holding the Simpsons jointly and severally liable with their attorneys for Rule 11 monetary sanctions which is reversed.

[¶ 21] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, and MARY MUEHLEN MARING, JJ., and EVERETT NELS OLSON, S.J., concur.

[¶ 22] The Honorable EVERETT NELS OLSON, S.J., sitting in place of KAPSNER, J., disqualified.