2008 ND 160

**A. William LUCAS, Plaintiff and Appellant**

v.

**James E. PORTER, Shelly Porter, Leonard W. Becker, First State Bank of Wilton, First Wilton Bancshares, Ltd., Defendants and Appellees.**

No. 20070169.

Supreme Court of North Dakota.

Aug. 28, 2008.

A. William Lucas, pro se, Bismarck, N.D., for plaintiff and appellant.

Richard P. Olson, Olson & Burns, P.C., Minot, N.D., for defendants and appellees James E. Porter, Shelly Porter, First State Bank of Wilton, and First Wilton Bancshares, Ltd.

Sheldon A. Smith, Smith Bakke Porsborg & Schweigert, Bismarck, N.D., for defendant and appellee Leonard W. Becker.

KAPSNER, Justice.

[¶ 1]  A.  William Lucas appeals from a judgment dismissing his action against James E. Porter, Shelly Porter, Leonard W. Becker, First Wilton Bancshares, Ltd., and First State Bank of Wilton.  Lucas argues the district court erred in deciding this action constituted the improper splitting of a cause of action.  We hold Lucas's prior action, *Lucas I*, and this action, *Lucas II*, arose out of the same facts and circumstances, and this action constitutes the improper splitting of a cause of action.  We affirm.

I

[¶ 2]  In *Lucas I*, Lucas initially sued James Porter, Bancshares, and First State Bank in a complaint dated December 11, 2003, regarding the sale of Bancshares' stock and the ownership of First State Bank.  Lucas subsequently amended his complaint to name only Bancshares and First State Bank as defendants.  Lucas alleged Bancshares was created as a holding company to own stock in First State Bank;  Lucas and James Porter each owned thirty percent and Becker owned forty percent of Bancshares' stock;  Lucas and James Porter had agreed to maintain equal ownership of Bancshares' stock and made a joint written offer to purchase Becker's shares of Bancshares, but James Porter later individually purchased Becker's shares without Lucas's knowledge; and James Porter thereafter used Banc-

shares as a "vehicle of oppression" to effectively freeze Lucas out of his shareholder rights in First State Bank. Lucas alleged that, at all relevant times, Bancshares and First State Bank were acting through James Porter as their agent, employee, president, chief executive officer, and director and that each corporation was liable for James Porter's actions. In *Lucas I*, Lucas sought: (1) involuntary dissolution of Bancshares under N.D.C.C. § 10–19.1–115; (2) an order directing Bancshares to deliver to Lucas thirty percent of its stock in First State Bank; (3) damages for conversion of Lucas's stock of First State Bank; (4) an order allowing Lucas to vote his shares of stock of First State Bank held by Bancshares; (5) an order prohibiting First State Bank from conducting a 2004 shareholder meeting until the court decided the procedure for voting First State Bank's stock held by Bancshares; and (6) an award of attorney's fees.

[¶ 3] In October 2006, shortly before trial in *Lucas I*, Lucas sued James and Shelly Porter, Becker, Bancshares, and First State Bank in this action, *Lucas II*, alleging Lucas and James Porter offered to jointly purchase Becker's stock in Bancshares, but James Porter separately purchased Becker's stock and James Porter thereafter voted his shares of stock of Bancshares in a manner that prevented Lucas from engaging in the management of Bancshares and First State Bank. Lucas claimed James Porter was "grossly mismanaging" First State Bank "to serve [Porter's] own personal interests, including the oppression of [Lucas's] shareholder rights." Lucas's complaint in *Lucas II* alleged: (1) a claim against James Porter for breach of a contract to purchase Becker's Bancshares' stock in equal shares; (2) claims against James Porter and Becker for breach of fiduciary duty, fraud, and tortious interference with Lucas's contrac-

tual rights regarding the purchase of Becker's stock; (3) a claim against James and Shelly Porter and Becker for oppression of a minority shareholder for freezing Lucas out as a minority shareholder of Bancshares and First State Bank; (4) claims against James Porter and Bancshares for a constructive trust and for specific performance of the alleged agreement to equally purchase Becker's Bancshares' stock; (5) a claim against James and Shelly Porter for conversion; (6) a claim against James Porter, Bancshares, and First State Bank for removal of James Porter as director and shareholder of First State Bank and Bancshares; (7) a claim against First State Bank and Bancshares for vicarious liability; (8) and claims against all the defendants for attorney's fees, an accounting, and for recission of the transactions between James Porter and Becker.

[¶ 4] The *Lucas I* trial was held on October 18 and 19, 2006. On October 24, 2006, the Porters, Bancshares, and First State Bank moved to dismiss the *Lucas II* complaint, arguing the allegations in that action were identical or similar to *Lucas I* and arose out of the same facts and circumstances. They claimed the allegations in *Lucas II* constituted the improper splitting of a cause of action. Becker subsequently answered and also claimed *Lucas II* constituted the improper splitting of a cause of action.

[¶ 5] At an April 3, 2007, hearing on the defendants' motion to dismiss *Lucas II*, the district court orally directed counsel for the defendants to prepare an order dismissing that action. On April 9, 2007, the court signed an order for judgment of dismissal of *Lucas II*, concluding it constituted an improper splitting of a cause of action under *Farmers Ins. Exch. v. Arlt*, 61 N.W.2d 429 (N.D.1953).

[¶ 6]   Although not part of the record in *Lucas II*, the parties do not dispute the *Lucas I* court issued findings of fact and a judgment in *Lucas I* on April 6, 2007.  The *Lucas I* judgment denied Lucas's request to involuntarily dissolve Bancshares, but granted him other equitable relief.  The *Lucas I* court found: (1) Bancshares had not converted Lucas's stock in First State Bank; (2) Porter had discharged his duties as officer and director of Bancshares in good faith and in a manner reasonably believed to be in the best interests of Bancshares and First State Bank; (3) the officers and directors of Bancshares had not acted fraudulently or illegally towards Lucas; (4) the actions by the directors and those in control of Bancshares and First State Bank, in effectively freezing Lucas out, were unfairly prejudicial to Lucas; and (5) the assets of Bancshares and First State Bank were not being misapplied or wasted.  The *Lucas I* court recognized *Lucas II* had recently been filed, which "complicate[d] the Court's ability to fashion an appropriate resolution," and "[u]ltimately how the ownership and operation of both corporations will turn out depends in part on whether there is any legally mandated change in the [corporate] ownership interests of Lucas and Porter" in *Lucas II*.  The *Lucas I* court recognized it could order shareholders to sell their shares of Bancshares to achieve a fair and equitable result, but James Porter was no longer a defendant in *Lucas I*. The *Lucas I* court thus decided it could only order the sale of Lucas's shares and said:

> [A]t this time it is not appropriate to make such a final determination since there is the other pending lawsuit [, *Lucas II*,] which is unresolved. . . . However, the Court reserves the right to consider such an equitable remedy *after* [*Lucas II* ] is resolved and upon proper motion being filed in this case by [Bancshares] or a shareholder in [Bancshares]

within 120 days after that case is finalized.  If such motion is filed the Court would then consider in its discretion and after notice and hearing whether such an order would be fair and equitable to all parties under the circumstances.

[¶ 7]   The *Lucas I* court refused to order the involuntarily dissolution of Bancshares, but because Lucas had been unfairly prejudiced, the court found Lucas was entitled to other equitable relief, including:

A.   The court's reserved right to have Lucas bought out at a fair value as contemplated in [N.D.C.C. § 10–19.1–115].

B.   [Bancshares] shall distribute one share of common stock of [First State] Bank to Lucas.

C.   While Lucas remains a shareholder of [Bancshares] he shall be permitted to vote at [First State] Bank Shareholder meetings his 30% of the 2,200 shares of Bank common stock held by [Bancshares], less the one share distributed directly to Lucas as noted above.

D.   While Lucas remains a shareholder of [Bancshares] he shall have all rights granted to shareholders in North Dakota as provided by North Dakota law, including cumulative voting, inspection of records, and the ability to bring direct and derivative actions.

E.   The parties to this action are free to and encouraged by the Court to consider negotiating a mutually acceptable remedy other than noted by the Court in these conclusions of law which both parties mutually find will resolve the differences which presently exist between Lucas and the other shareholder, Porter, and [First State] Bank and [Bancshares].

F.   Lucas is awarded attorney's fees against [Bancshares] in an amount to be

approved by the Court and is also awarded statutory costs and disbursements as provided by North Dakota law.

## II

[¶ 8] Although the defendants moved to dismiss this action under N.D.R.Civ.P. 12, the defendants presented exhibits to the district court outside the pleadings in this action. Under N.D.R.Civ.P. 12(c) "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." The district court did not explicitly exclude the defendants' exhibits, and because the court received exhibits that were outside the pleadings in this action, we consider the issues raised in this appeal in the posture of summary judgment. *Witzke v. City of Bismarck*, 2006 ND 160, ¶¶ 5–6, 718 N.W.2d 586. In *Witzke*, at ¶ 7 (citations omitted), we outlined our standards for review of a summary judgment:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that reasonably can be drawn from the undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. On appeal, we view the evidence in the light most favorable to the opposing party, and that party must be given the benefit of all favorable inferences. We review a district court's decision to grant summary judgment de novo on the entire record.

## III

[¶ 9] Lucas argues although *Lucas I* and *Lucas II* involve similar background facts, they have different operative facts, different parties, different law, different remedies, different causes of action arising at different times, and different issues. Lucas claims *Lucas I* was for the dissolution of Bancshares and *Lucas II* is for breach of fiduciary duties regarding his alleged agreement with James Porter to equally purchase Becker's shares of Bancshares. Lucas asserts the purpose of the rule against splitting a cause of action, the protection of a defendant, is not applicable to this case because the defendants in *Lucas I* and *Lucas II* are not the same. He claims he did not improperly split his cause of action and seeks a reversal and remand for trial of *Lucas II,* or for consolidation with *Lucas I.*

[¶ 10] A party with a single cause of action generally may not split that cause of action and maintain several lawsuits for different parts of the action. *Knaebel v. Heiner,* 645 P.2d 201, 204 (Alaska 1982); *Best Coin–Op, Inc. v. Paul F. Ilg Supply Co., Inc.,* 189 Ill.App.3d 638, 136 Ill.Dec. 957, 545 N.E.2d 481, 493 (1989); *Kessler v. Old Guard Mut. Ins. Co.,* 391 Pa.Super. 175, 570 A.2d 569, 573 (1990). *See* 1A CJS *Actions* § 224 (2005); 1 Am.Jur.2d *Actions* § 103 (2005). The doctrine of res judicata claim preclusion is premised upon the prohibition against splitting a cause of action. *Riverwood Commercial Park, L.L.C. v. Standard Oil Co., Inc.,* 2007 ND 36, ¶ 15, 729 N.W.2d 101; *see also Farmers Ins. Exch.,* 61 N.W.2d at 434–38; 18 James Wm. Moore, *Moore's Federal Practice* § 131.20[1] (3rd ed.2008). The rule against splitting a cause of action is in part a rule of abatement and in part a rule of res judicata. *Hamilton v. Asbestos Corp. Ltd.,* 22 Cal.4th 1127, 95 Cal.Rptr.2d 701, 998 P.2d 403, 414 (2000). The rule against splitting a cause of action prevents splitting under a

rule of abatement if the first action is pending when the second action is begun, and prevents splitting under a rule of res judicata if the first action has terminated in a judgment on the merits when the second action is brought. *Id.*

[¶ 11] In *Plott v. Kittelson,* 58 N.D. 881, 886–87, 228 N.W. 217, 218–19 (1929), this Court explained a rule of abatement:

"If the court, upon a consideration of the proof adduced, finds that another action is pending between the same parties and for the same cause, its judgment should be that the action abate * * *. But the defense of another action pending does not authorize a judgment on the merits of the case. Hence the court should not give a general judgment in favor of the defendant, nor a judgment that the plaintiff take nothing by his action. * * * *" In other words, if it appears from the showing made that there is another action pending, the action abates. If the other action is tried and judgment is entered, it is a bar to the subsequent action. If it is dismissed without prejudice, the abated action may be revived.

[¶ 12] In *Plott,* 58 N.D. at 887, 228 N.W. at 219, the prior action had been dismissed, and this Court held the district court did not err in denying the defendant's plea of abatement. *See First State Bank v. Osborne–McMillan Elev. Co.,* 53 N.D. 551, 556–57, 207 N.W. 37, 39 (1926) (dismissing prior case without prejudice did not operate as a bar to subsequent case).

[¶ 13] In *Meagher v. Quale,* 77 N.W.2d 878, 880 (N.D.1956) (emphasis in original), this Court discussed identity of action requirements for a plea of abatement in a case in which this Court held a prior pending action was not a bar to a subsequent action:

"The usual tests of identity of actions are whether a final judgment or decree in the one action would operate as a bar to the other; or whether the same evidence will support both actions. * * One test that is usually employed is whether a final judgment or decree in the prior action would be conclusive between the parties and operate as a bar to the second action; or, in other words, whether a final judgment or decree in the prior action, pleaded in abatement, would support a plea of res judicata of the issues involved in the second action." 1 C.J.S., Abatement and Revival, § 42, b, p. 69.

"All courts agree that the cause of action must be the same in order that a pending suit abate one subsequently commenced, but difficulty is often encountered in determining whether the two causes are the same, and the authorities are not entirely harmonious. In many cases much the same test is used in determining what is the same cause of action for the purpose of abatement that is used in determining when a matter is res judicata. The ultimate inquiry seems to be whether the judgment in the first, if one is rendered, would be conclusive upon the parties in respect of the matters involved in the second. In other words, if a judgment in the first action would bar the other action, then the subsequent action will abate; *but if such judgment would constitute no bar to the action, there is nothing to prevent the latter action from being maintained. Another test of identity is whether the same evidence will support both. Still another recognized test is whether the same full and adequate relief could be had in the prior action as in the one sought to be abated.*" 1 Am.Jur., Abatement and Revival, Section 28, p. 35.

[¶ 14] In *Meagher*, 77 N.W.2d at 879–82, the plaintiff in a prior pending action, Quale, sought damages in the prior action from Meaghers for negligently raising an apartment building, and Meaghers denied liability and counterclaimed for the amount claimed due for their work. While that action was pending, Meaghers sued Quale to foreclose on a mechanic's lien for the amount due for their work, and Quale alleged the prior pending lawsuit as a defense and also counterclaimed for damages from Meaghers' alleged negligence. *Id.* at 879. This Court said the actions were not by the same plaintiff, were not for the same purposes and relief, and were not identical, and this Court held the prior pending action did not bar the second action. *Id.* at 881–82. *See McLain v. Nurnberg*, 16 N.D. 138, 141, 112 N.W. 245, 246–47 (1907) (holding prior pending action was bar to second action and stating "unless the issues are identical in the two actions, an answer pleading the pendency of the former action must fail. If, however, the issues are the same, the answer setting forth the pendency of the former action will be sustained, as litigants are not to be harassed by a multiplicity of suits, or even two suits involving the same issues"). The principles for abatement are intended to preclude harassment or oppression of a defendant by the pendency of two actions against the defendant at the same time by a plaintiff who has a complete remedy with one action. *See* 1 CJS, *Abatement and Revival*, at § 19; 1 Am.Jur.2d *Abatement, Survival, and Revival*, at § 6.

[¶ 15] *Meagher* supports the principle that a prior pending action may be pleaded as a bar to a subsequent action where a final judgment in the prior action, pleaded in abatement, would support the application of res judicata to the issues involved in the second action. 77 N.W.2d at 880. *See* 1 CJS *Abatement and Revival*, at § 37 (2005); 1 Am.Jur.2d *Abatement, Survival, and Revival*, at § 29. We conclude that rule is applicable to abatement, and we apply it to this case.

[¶ 16] Res judicata claim preclusion bars courts from relitigating claims in order to promote finality of judgments, which increases certainty, avoids multiple litigation, wasteful delay and expense, and ultimately conserves judicial resources. *Riverwood Commercial Park*, at ¶ 13; *Borsheim v. O & J Properties*, 481 N.W.2d 590, 596–97 (1992). Claim preclusion "prevents the relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies." *Riverwood Commercial Park*, 2007 ND 36, ¶ 13, 729 N.W.2d 101 (quoting *Ungar v. North Dakota State Univ.*, 2006 ND 185, ¶ 11, 721 N.W.2d 16). Claim preclusion applies even if subsequent claims are based upon different legal theories. *Riverwood*, at ¶ 13; *Ungar*, at ¶ 11; *Simpson v. Chicago Pneumatic Tool Co.*, 2005 ND 55, ¶ 11, 693 N.W.2d 612; *Borsheim*, at 597; *Wolf v. Anderson*, 422 N.W.2d 400, 401–02 (N.D.1988). The application of claim preclusion is a question of law, fully reviewable on appeal. *Id.*; *Ungar*, 2006 ND 185, ¶ 10, 721 N.W.2d 16; *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 383 (N.D.1992).

[¶ 17] In *Farmers Ins. Exch.*, 61 N.W.2d at 434–38, an appeal from the second of two separate lawsuits for damages from one automobile accident, this Court held that a judgment against an insured in the insured's prior action against the alleged tortfeasor for property damages and personal injury was a complete bar to the second action by the insured's insurer against the alleged tortfeasor for property damages in the automobile accident. This Court discussed the requirements of a "cause of action" for purposes of splitting a

cause of action and the preclusive effect of the judgment in the prior action:

In *Brevick v. Cunard S.S. Co.*, 63 N.D. 210, 213, 247 N.W. 373, 375, this court held that it is the act done "which gives the plaintiff his cause of action". In *Durham v. Spence, L.R. Exch.* 46, cited in *Brevick v. Cunard S.S. Co., supra,* the court says: "I understand by 'cause of action' that which creates the necessity for bringing the action." In *Harvey v. Parkersburg Insurance Co.*, 37 W.Va. 272, 16 S.E. 580, it is held: " 'Cause of action' generally means the breach of duty".

"A right of action at law arises from the existence of a primary right in the plaintiff and an invasion of that right by some act or omission on the part of the defendant. The facts which establish the existence of that right and its violation constitute the cause of action."

This court has repeatedly held that a cause of action cannot be divided; that when there is a single cause of action, although there may be different kinds of damages, only one suit can be brought.

In *Jacobson v. Mutual Ben. Health & Accident Ass'n*, 73 N.D. 108, 11 N.W.2d 442, 446, this court said:

"It is a familiar doctrine 'that causes of action may not be divided, and that one who has availed himself of a part of a single claim or obligation in an action or defense is estopped thereafter from enforcing the remainder of it.' In the later case it is said: 'A party cannot in one action sue for a part of that to which he is entitled, and in a subsequent action sue for the remainder, when the right or recovery rests on the same state of facts.' "

The principle that causes of action cannot ordinarily be divided is also upheld in *Albaugh v. Osborne–McMillan Elevator Co.*, 53 N.D. 113, 205 N.W. 5;

*Reineke v. Commonwealth Ins. Co.*, 52 N.D. 324, 202 N.W. 657; *Hyyti v. Smith*, 67 N.D. 425, 272 N.W. 747.

61 N.W.2d at 434–35 (citations omitted).

[¶ 18] Under *Farmers Ins. Exch.*, 61 N.W.2d at 434, the facts that establish the existence of a right in a plaintiff and an invasion of that right by defendant constitute a cause of action, and if a right of recovery rests on the same state of facts, the cause of action may not be split. In *Simpson*, 2005 ND 55, ¶ 11, 693 N.W.2d 612 (quoting *Morgan Consultants v. American Tel. and Tel. Co.*, 546 F.Supp. 844, 848 (S.D.N.Y.1982)), we also explained a cause of action is " 'the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.' " *See* Restatement (Second) of Judgments § 24 (1982) (stating valid final judgment on plaintiff's claim extinguishes all rights of plaintiff to remedies against defendant with respect to all or any part of transaction, or series of connected transactions out of which action arose and explaining in comment b that transaction connotes a natural grouping or common nucleus of operative facts); 18 *Moore's Federal Practice* at § 131.20[2] (stating most federal courts generally follow Restatement approach and apply same transaction analysis, which considers whether claims involve natural grouping or common nucleus of operative facts, rather than type of relief requested, substantive theories advanced, or types of rights asserted).

[¶ 19] Lucas argues *Lucas I* involved dissolution of Bancshares, and relying on *Triple Five, Inc. v. Simon*, 404 F.3d 1088 (8th Cir.2005), he asserts *Lucas II* involves claims for breach of fiduciary duties and his alleged agreement with James Porter to equally purchase Becker's shares of Bancshares. However, *Triple Five* in-

volved an alleged breach of a fiduciary duty and usurpation of a partnership opportunity, and it did not involve an issue about splitting a cause of action or claim preclusion. *Id.* at 1095–1100. The issue here is whether *Lucas II* constitutes the improper splitting of a cause of action, which requires consideration of whether the claims in each action arise out of the same underlying operative facts that establish the existence of Lucas's rights and the invasion of those rights by the defendants.

[¶ 20] *Lucas I* involved Lucas's claim for involuntary dissolution of Bancshares, a closely-held corporation, under N.D.C.C. § 10–19.1–115, which provides a broad range of remedies for minority shareholders in closely-held corporations. *See Brandt v. Somerville*, 2005 ND 35, ¶¶ 9–10, 692 N.W.2d 144. Section 10–19.1–115(1)(b),(2),(3), and (5), N.D.C.C., authorize a court to dissolve a closely-held corporation or grant any just and reasonable equitable relief in a shareholder action when the shareholder establishes the directors, or those in control of the corporation, have acted fraudulently or illegally, or in a manner unfairly prejudicial toward the shareholder, or if corporate assets are being misapplied or wasted. The court may order the sale of shares in a manner that is fair and equitable to all parties under the circumstances of the case. N.D.C.C. § 10–19.1–115(3). In deciding whether to dissolve a closely-held corporation or order other equitable relief, the court shall consider the shareholders' duty to one another to act in an honest, fair, and reasonable manner in the operation of the corporation and the shareholders' reasonable expectations, and any buy-sell agreement among shareholders is presumed to reflect the parties' reasonable expectations. N.D.C.C. § 10–19.1–115(4). In deciding whether to dissolve a corporation, the court also shall consider whether lesser relief would be adequate to permanently relieve the circumstances established in N.D.C.C. § 10–19.1–115(1)(b). N.D.C.C. § 10–19.1–115(5).

[¶ 21] In *Lucas I*, Lucas initially named James Porter as a defendant. After amending the complaint, Lucas ultimately claimed Bancshares and First State Bank were acting through James Porter, and the underlying factual circumstances involving James Porter's actions for the corporations were litigated in *Lucas I*. Although James Porter ultimately was not a named party in *Lucas I* and there is some difference in Lucas's legal theories of recovery in *Lucas I* and *Lucas II*, Lucas's claims in each action involve the same underlying common operative facts and alleged wrongful conduct by the corporations or its agents in buying Bancshares' stock and effectively freezing Lucas out of his shareholder rights in the corporations. Lucas's characterization of operative facts is another way of characterizing alternative legal theories or remedies for the same common nucleus of facts that established the existence of his rights in *Lucas I*. However, claim preclusion applies if the subsequent claims are based on the same underlying factual circumstances even if the subsequent claims are based on different legal remedies or theories. *See Riverwood*, 2007 ND 36, ¶ 13, 729 N.W.2d 101; *Ungar*, 2006 ND 185, ¶ 11, 721 N.W.2d 16; *Simpson*, 2005 ND 55, ¶ 11, 693 N.W.2d 612; *Wolf*, 422 N.W.2d at 401–02; *Farmers Ins. Exch.*, 61 N.W.2d at 434–38. We conclude the allegations in *Lucas I* and *Lucas II* arose out of the same common operative facts that established the existence of Lucas's rights and those facts constitute the same cause of action for purposes of the prohibition against splitting a cause of action.

[¶ 22] Lucas nevertheless argues *Lucas I* and *Lucas II* involve differ-

ent parties. This Court has adopted an "expanded" version of privity for claim preclusion. *Ungar*, 2006 ND 185, ¶ 12, 721 N.W.2d 16 (citing *Simpson*, 2005 ND 55, ¶ 10, 693 N.W.2d 612). "[P]rivity exits if a person is 'so identified in interest with another that he represents the same legal right.'" *Hofsommer*, 488 N.W.2d at 384 (quoting 46 Am.Jur.2d *Judgments*, § 532 (1969)). In *Hofsommer*, at 384 (quoting *Stetson v. Investors Oil, Inc.*, 176 N.W.2d 643, 651 (N.D.1970)), we said:

> "The strict rule that a judgment is operative, under the doctrine of res judicata, only in regard to parties and privies, is sometimes expanded to include as parties, or privies, a person who is not technically a party to a judgment, or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised by prosecution of the action, employment of counsel, control of the defense, filing of an answer, payment of expenses or costs of the action, the taking of an appeal, or the doing of such other acts as are generally done by parties."

Fundamental fairness underlies the determination of privity. *Ungar*, at ¶ 12. A judgment on the merits exonerating a party from liability precludes a subsequent action against a party whose liability, if any is derivative of or secondary to the exonerated party. *Id.*

[¶ 23] Here, Bancshares and First State Bank were named defendants in both *Lucas I* and *Lucas II*, and Lucas's claims against both corporate defendants in each action arose out of the same underlying factual circumstances for purposes of splitting a cause of action. James Porter was initially a named defendant in *Lucas I*, but Lucas subsequently amended his complaint to allege the corporate defendants in that action were acting through James Porter and Lucas's claims against James Porter in this action are derivative of his claims against the corporations in *Lucas I*. Lucas's claims against Shelly Porter in this action include oppression of a minority shareholder, conversion, attorney's fees, an accounting, and recission of the transactions between James Porter and Becker. Those claims all involve allegations stemming from Shelly Porter's involvement with the corporate defendants and are also derivative of Lucas's claims against the corporations in *Lucas I*. In *Lucas II*, Lucas did not sue Becker for breach of a contract regarding Becker's sale of Bancshares' stock to James Porter. Lucas's claims against Becker in *Lucas II* alleged: (1) Becker breached a fiduciary duty regarding his duties as a shareholder, director, officer, and person in control of Bancshares and First State Bank; (2) Becker was guilty of fraud for failing to disclose information he was required to disclose by his fiduciary relationship with Lucas; (3) Becker tortiously interfered with Lucas's contractual rights by breaching fiduciary agreements and duties to Lucas; (4) Becker breached fiduciary duties of good faith and fair dealing to Lucas, thereby entitling Lucas to rescind the stock sale and unwind the transactions; and (5) Becker oppressed a minority shareholder. Lucas's claims against Becker in *Lucas II* arise out of the same factual circumstances as the claims in *Lucas I* and also are derivative of Lucas's claims against the corporations in that action.

[¶ 24] We conclude Lucas's claims against Becker and the Porters in this action arose out of the same underlying factual circumstances that established the existence of Lucas's rights in *Lucas I* and are derivative of his claims against the corporations in *Lucas I*. Under these circumstances, we conclude there is a sufficient identity of common interests of the

corporate defendants in *Lucas I* with the individual defendants in *Lucas II* for purposes of claim preclusion and splitting a cause of action. We therefore conclude *Lucas II* involves an action against the same parties or their privies as in *Lucas I* for purposes of splitting a cause of action.

[¶ 25] Lucas argues the defendants waived the defense of splitting a cause of action because they allowed *Lucas I* to proceed to trial before raising that defense in *Lucas II*.

[¶ 26] This Court has recognized that parties may agree or acquiesce to splitting a claim. *See Zueger v. Carlson*, 542 N.W.2d 92, 97 (N.D.1996) (party expressly consented to splitting dram shop and common law claims); *Klem v. Greenwood*, 450 N.W.2d 738, 742–43 (N.D.1990) (citing Restatement of Judgments (Second) § 26(1)(a) (1982) and stating parties agreed to split claim for malpractice from claim for attorney's fees). *See also* 18 *Moore's Federal Practice* at § 131.24[1]. Here, however, the defendants' motion to dismiss *Lucas II* was made within the time for answering the complaint in that action, and Lucas has not cited any other evidence to show an agreement or acquiescence for purposes of splitting a cause of action. We therefore reject Lucas's claim about waiver.

[¶ 27] We conclude that, for purposes of splitting a cause of action, *Lucas II* arose from the same underlying operative facts that established the existence of Lucas's rights in *Lucas I* and *Lucas I* has been tried on the merits. We therefore conclude the district court did not err in dismissing Lucas's complaint in *Lucas II*.

### IV

[¶ 28] Becker argues he is entitled to attorney's fees and costs on appeal under N.D.R.App.P. 38, because Lucas's appeal is frivolous. Under N.D.R.App.P. 38, if this Court determines an appeal is frivolous, "damages and single or double costs, including reasonable attorney's fees" may be awarded. "An appeal is frivolous if it is flagrantly groundless, devoid of merit, or demonstrates persistence in the course of litigation which could be seen as evidence of bad faith." *Witzke*, 2006 ND 160, ¶ 19, 718 N.W.2d 586 (quoting *Riemers v. O'Halloran*, 2004 ND 79, ¶ 16, 678 N.W.2d 547). We conclude Lucas's appeal is not flagrantly groundless, devoid of merit, and does not demonstrate persistence in the course of litigation which can be seen as evidence of bad faith. We therefore decline to award Becker attorney's fees under N.D.R.App.P. 38.

### V

[¶ 29] We affirm the district court judgment.

[¶ 30] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.