2017 ND 140

**SNAPS HOLDING COMPANY, a North Dakota corporation, Plaintiff, Appellee and Cross–Appellant**

v.

**Jim LEACH and Elizabeth Leach, Defendants, Appellants and Cross–Appellees**

and

**Steve Leach, Defendant and Appellee**

and

**Darlene Leach, Frank A. Barber, Sherry Barber, Dennis J. Meyer, Jerry Nelson, Marjo Nelson, Kathy Hegland, Michael Hegland, Rebecca Soloway, William Ockert, Delores Reznechek, John Bergstrom, Janice Scott, John W. Scott, and all other shareholders of IDA of Moorhead Corporation, as listed on Exhibit A, attached hereto and**

made a part hereof by reference, Defendants

No. 20160313

Supreme Court of North Dakota.

Filed 6/7/2017

Benjamin J. Hasbrouck (argued) and Todd E. Zimmerman (on brief), Fargo, ND, for plaintiff, appellee and cross-appellant SNAPS Holding Company.

Paul A. Sortland, Minneapolis, MN, for defendants, appellants, and cross-appellees Jim Leach and Elizabeth Leach.

James A. Teigland, Fargo, ND, for defendant and appellee Steve Leach.

Kapsner, Justice.

[¶ 1] Jim Leach and Elizabeth Leach appeal a district court judgment awarding money damages to SNAPS Holding Company after ruling they breached a stock purchase agreement with SNAPS. SNAPS cross-appeals from the dismissal of its breach of contract claims against Jim Leach and Steve Leach. We affirm in part, reverse in part, and remand.

I

[¶ 2] Jim Leach was the chief operating officer and majority shareholder of IDA of Moorhead Inc., a corporation he created to manufacture electronic communications equipment. Jim Leach's wife, Elizabeth Leach, and his son, Steve Leach, also owned shares of IDA.

[¶ 3] In 1994, Jim Leach sold IDA to IDA's employees, including Reed Danuser. In 2010, Jim Leach and the IDA board of directors terminated Danuser's employment as president and chief executive officer of IDA. Danuser sued IDA, Jim Leach, and others for wrongful termination and breach of fiduciary duty.

[¶ 4] While Danuser's lawsuit was pending, Jim Leach began negotiating with Sanjay Patel, president and CEO of SNAPS, to sell IDA to SNAPS. During negotiations the parties discussed the effect of Danuser's lawsuit on the potential sale. The parties agreed SNAPS would be responsible for the first $100,000 of expenses associated with the lawsuit, and Jim Leach and IDA would be responsible for that portion exceeding $100,000. At a July 2011 shareholders and board of directors meeting, the IDA shareholders and board of directors authorized the sale of IDA's stock to SNAPS for $1,180,000. The minutes of both meetings indicate that any award, costs, and expenses associated with the Danuser lawsuit would be deducted from the purchase price. The minutes also indicate it was "anticipated that the pending litigation costs and expenses will not exceed $100,000."

[¶ 5] In September 2011, Jim Leach and Patel executed the stock purchase agreement for the IDA stock sale. Jim Leach signed the agreement on behalf of himself, as president of IDA, and as the agent for Elizabeth Leach and all other selling shareholders. The agreement provided SNAPS would be responsible for the first $100,000 related to the Danuser lawsuit, and the selling shareholders would be responsible for any excess amount. SNAPS also executed a $770,000 promissory note, payable to Jim Leach, individually and as agent for the selling shareholders, for the remaining balance due under the stock purchase agreement.

[¶ 6] In October 2012, the district court ruled IDA wrongfully terminated Danuser and Jim Leach breached a fiduciary duty to Danuser. The court awarded Danuser a money judgment of over $820,000 against Jim Leach and IDA. *See Danuser v. IDA Marketing Corp.*, 2013 ND 196, ¶ 40, 838 N.W.2d 488 (affirming judgment).

[¶ 7] Jim Leach and the selling shareholders of IDA refused to pay the Danuser judgment. In January 2014, Danuser filed the judgment against Jim Leach in Arizona. Danuser subsequently assigned the judgment to SNAPS and IDA in February 2014 and Jim Leach objected to the filing of the judgment against him in Arizona. In February 2015, the Arizona court ruled SNAPS and IDA could not enforce the judgment against Jim Leach in Arizona. The court concluded SNAPS exercised total control over the management and activities of IDA and was the alter ego of IDA. The Arizona court concluded both Arizona and North Dakota law prohibit contribution between intentional joint tortfeasors; therefore, allowing IDA to obtain contribution from Jim Leach, its co-intentional joint tortfeasor, was prohibited in Arizona.

[¶ 8] SNAPS sued Jim Leach, Elizabeth Leach, Steve Leach, and the other former IDA shareholders in December 2014 after they failed to pay the Danuser judgment. SNAPS alleged it had paid over $400,000 toward the Danuser judgment and that under the stock purchase agreement, the former IDA shareholders were responsible for Danuser's damages in excess of $100,000. Jim Leach and Elizabeth Leach counterclaimed, alleging SNAPS breached the stock purchase agreement by failing to pay $277,500 remaining under the promissory note.

[¶ 9] All parties moved for summary judgment. SNAPS argued Jim and Elizabeth Leach were responsible for any amounts SNAPS paid in the Danuser lawsuit exceeding $100,000. Jim Leach, Elizabeth Leach, and Steve Leach argued the Arizona ruling was res judicata and prohibited SNAPS from enforcing the Danuser judgment against them in this case.

[¶ 10] The district court granted SNAPS' motion for partial summary judgment on the issue of liability against Jim and Elizabeth Leach, concluding the "unambiguous language of the Stock Purchase Agreement makes the sellers ... responsible for any amounts paid in the Reed Danuser lawsuit exceeding $100,000." The court denied SNAPS' motion against Steve Leach, concluding there was a genuine issue of material fact whether Jim Leach had authority to sign the stock purchase agreement on behalf of Steve Leach. The court thereafter granted summary judgment in favor of Jim and Steve Leach, concluding res judicata prohibited SNAPS from enforcing the stock purchase agreement against them on the basis of the Arizona court's ruling. The court denied Elizabeth Leach's summary judgment motion, concluding SNAPS' claims under the stock purchase agreement could be enforced against her because she was not a party to the Arizona proceeding.

[¶ 11] After a June 2016 trial, the district court found Jim Leach had authority to act on behalf of Elizabeth Leach and the shareholders in executing the stock purchase agreement. The court found the sellers of IDA's stock, including Elizabeth Leach, breached the stock purchase agreement by refusing to pay the Danuser judgment for all amounts exceeding $100,000. The court found Jim Leach also breached the agreement; however, SNAPS could not recover against him because of the court's earlier order relating to res judicata and the Arizona ruling.

[¶ 12] The district court found SNAPS paid Danuser over $619,000. The court found $277,500 remained due from SNAPS under the promissory note, but concluded SNAPS did not breach the stock purchase agreement by refusing to pay that amount. The court reduced SNAPS' damages by $277,500 and entered a $241,608 judgment against Elizabeth Leach. The court dismissed SNAPS' claims against Jim Leach

and Steve Leach and dismissed the counterclaim against SNAPS.

## II

■ [¶ 13] Elizabeth Leach argues the district court erred in interpreting the stock purchase agreement. She argues the stock purchase agreement does not impose a duty of indemnification upon the IDA sellers to reimburse SNAPS for the payments made to Danuser exceeding $100,000.

■ [¶ 14] Interpretation of a contract presents a question of law fully reviewable on appeal. *Bendish v. Castillo*, 2012 ND 30, ¶ 16, 812 N.W.2d 398. A contract must be interpreted to give effect to the mutual intention of the contracting parties. N.D.C.C. § 9–07–03. A contract's language governs its interpretation "if the language is clear and explicit and does not involve an absurdity." N.D.C.C. § 9–07–02. The entire contract is to be taken together to give effect to every part if reasonably practicable and each clause helps interpret the others. N.D.C.C. § 9–07–06. The words of a contract are to be understood in their ordinary meaning. N.D.C.C. § 9–07–09.

[¶ 15] The two provisions in the stock purchase agreement relating to the Danuser litigation and indemnification state:

> Reed Danuser Litigation. Buyer is aware of the pending Reed Danuser litigation, and has had an opportunity to review the Company's records and litigation documents with regard to the pending action, and subject to the indemnity provisions as hereinafter set forth, the Buyer agrees to indemnify and pay all expenses and judgments associated with said lawsuit.
>
> Indemnification. Buyer shall hold and indemnify Sellers harmless from the claims of Reed Danuser up to the sum of $100,000.00. In the event the amount necessary to resolve the issues with Reed Danuser exceed $100,000.00 the Seller shall be responsible for that portion. In the event the amount is less than $100,000.00, the difference shall be paid to the Sellers.

[¶ 16] The district court addressed those provisions in the stock purchase agreement:

> [T]he language of the agreement in regards to the indemnification rights between the parties is not ambiguous. Paragraph 10 clearly states that Plaintiff, [SNAPS], has an obligation to hold harmless and indemnify the Sellers, the Defendants here, for a sum of up to $100,000.00. It is only in the event that the amounts paid in the Danuser lawsuit exceed $100,000.00 that the Sellers, the Defendants, would be responsible.
>
> Here, Plaintiff's Complaint alleges expenses and damages [in the Danuser lawsuit] exceeding $100,000.00.
>
> . . . .
>
> Here, the unambiguous language of the Stock Purchase Agreement makes the sellers, the Defendants, responsible for any amounts paid in the Reed Danuser lawsuit exceeding $100,000.00 dollars.

[¶ 17] We agree with the district court's interpretation of the stock purchase agreement. Under the plain language of the agreement, SNAPS was responsible for the first $100,000 of damages and expenses in the Danuser lawsuit. Any amounts exceeding $100,000 were the sellers' responsibility. Because SNAPS paid Danuser more than $100,000, the sellers are responsible for reimbursing SNAPS for all amounts paid exceeding $100,000.

## III

[¶ 18] Elizabeth Leach argues the district court erred in finding she authorized Jim Leach to do everything necessary to

sell her IDA stock. She argues she did not consent to the language in the stock purchase agreement holding the sellers responsible for all expenses exceeding $100,000 in the Danuser litigation. She argues her consent granting Jim Leach authorization to sell her stock should have been in writing.

[¶ 19] "Agency is generally a question of fact." *Lagerquist v. Stergo*, 2008 ND 138, ¶ 9, 752 N.W.2d 168 (quoting *Stockman Bank of Montana v. AGSCO, Inc.*, 2007 ND 26, ¶ 11, 728 N.W.2d 142). A district court's finding of agency is reviewed under the clearly erroneous standard of review. *Lagerquist*, at ¶ 9. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence supporting the finding, a reviewing court is left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 10. Under N.D.C.C. § 3–02–08(1), an "agent has authority [t]o do everything necessary or proper and usual in the ordinary course of business to effect the purpose of the agent's agency."

[¶ 20] Elizabeth Leach's argument regarding Jim Leach's authority relates to the two paragraphs in the stock purchase agreement discussing the Danuser litigation and indemnification. The district court found Jim Leach and Sanjay Patel discussed the Danuser litigation while negotiating the IDA stock sale to SNAPS. The court found Jim Leach initially downplayed the lawsuit, calling it "noise" and "Jim made several references that Danuser would get nothing." The court found the "general practice in such acquisition is to have the seller be responsible for contingent liabilities, such as the Danuser lawsuit." The court found a June 2011 letter of intent between the parties indicated the seller would be "completely responsible for the Danuser lawsuit, in that any amounts paid for the Danuser claim would be deducted from the purchase price."

[¶ 21] At a July 5, 2011, shareholder and board of directors meeting, the sale of IDA stock to SNAPS and the Danuser lawsuit were discussed. Regarding the terms of the stock sale, the minutes of both meetings state that "[f]rom the purchase price . . . there will be deducted any award, costs and expenses associated with pending litigation with Reed Danuser. It is anticipated that the pending litigation costs and expenses will not exceed $100,000." The minutes and a certificate of resolution reflect the shareholders and board of directors authorized Jim Leach, individually and as agent for the shareholders, to sell IDA's stock shares to SNAPS.

[¶ 22] The district court found that after those meetings, Jim Leach and Patel agreed "SNAPS would be responsible for the first $100,000 of the Danuser lawsuit, and Jim and IDA would be responsible for the rest." The stock purchase agreement executed by the parties in September 2011 included the two previously quoted paragraphs relating to the Danuser litigation and indemnification. The court found Jim Leach signed the stock purchase agreement on behalf of himself, as President of IDA and as agent for Elizabeth Leach and all other shareholders.

[¶ 23] The district court found Jim Leach "was the acting agent for Elizabeth and other shareholders for selling their stock in the Stock Purchase Agreement." Jim Leach testified he signed the agreement as the agent for Elizabeth Leach. Elizabeth Leach testified Jim Leach signed the agreement as her agent. The court found Elizabeth Leach did not restrict Jim Leach's authority to act on her behalf to sell her IDA stock. The court found Jim Leach "was authorized by Eliza-

beth to do everything necessary and usual in the course of business to effectuate the sale of her stock in the Stock Purchase Agreement." The court found Jim Leach believed Danuser would not be awarded over $100,000 in damages. The court found that by agreeing to the language in the agreement relating to the Danuser litigation, "Jim did everything necessary or proper and usual in order to affect the sale of Elizabeth's stock. Therefore, Jim had the actual authority to so act."

[¶ 24] Elizabeth Leach argues her authorization to Jim Leach to sell her stock should have been in writing. She argues that under the statute of frauds in N.D.C.C. § 9–06–04, an indemnity agreement is a special promise to answer for the debt of another and must be in writing. Because the indemnity provision in the stock purchase agreement was required to be in writing, she argues her authority to Jim Leach to act as her agent also should have been in writing.

[¶ 25] Under N.D.C.C. § 3–02–06, "an authority to enter into a contract required by law to be in writing . . . can be given only by an instrument in writing." The statute of frauds, N.D.C.C. § 9–06–04(2), requires a special promise to answer for the debt of another to be in writing. "Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person." N.D.C.C. § 22–02–01.

[¶ 26] Elizabeth Leach argues her authority to Jim Leach was required to be in writing because an indemnity agreement must be in writing. Nothing in N.D.C.C. ch. 22–02 relating to indemnity requires a contract for indemnity to be in writing. Additionally, this Court has held a contract for indemnity need not be in writing. *See Grinnell Mut. Reinsurance Co. v. Center Mut. Ins. Co.*, 2003 ND 50, ¶ 40, 658 N.W.2d 363 ("A right of indemnity may arise by express agreement or by implication."); *Johnson v. Haugland*, 303 N.W.2d 533, 543 (N.D. 1981) ("[A] contract of indemnity need not be express but indemnity may be recovered if the evidence establishes an implied contract."). We conclude Jim Leach was not required to obtain written authorization from Elizabeth Leach or the other selling shareholders to act as their agent in selling their IDA stock. On this record, we conclude the district court did not clearly err in finding Jim Leach had authority under N.D.C.C. § 3–02–08(1) to do everything necessary and usual in the course of business to execute the stock purchase agreement on behalf of Elizabeth Leach and the other selling shareholders. We are not left with a definite and firm conviction a mistake has been made.

### IV

[¶ 27] SNAPS argues the district court erred in concluding res judicata precluded SNAPS from enforcing its claims against Jim Leach and Steve Leach.

[¶ 28] "Res judicata claim preclusion bars courts from relitigating claims in order to promote finality of judgments, which increases certainty, avoids multiple litigation, wasteful delay and expense, and ultimately conserves judicial resources." *Lucas v. Porter*, 2008 ND 160, ¶ 16, 755 N.W.2d 88. Res judicata prevents the "relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies." *Id.* (quoting *Riverwood Commercial Park, L.L.C. v. Standard Oil Co., Inc.*, 2007 ND 36, ¶ 13, 729 N.W.2d 101). Res judicata applies if the subsequent claims are based on the same underlying facts even if the subsequent claims are based on different legal theories. *Lucas*, at ¶ 21. The applica-

tion of res judicata is a question of law, fully reviewable on appeal. *Id.* at ¶ 16.

[¶ 29] SNAPS argues the district court erred in concluding res judicata barred its claims under the stock purchase agreement against Jim Leach and Steve Leach. We agree.

[¶ 30] Danuser sued IDA, Jim Leach, and others after he was removed as president and chief executive officer of IDA in 2010. SNAPS purchased the IDA stock in 2011 while the Danuser lawsuit was pending. The district court awarded Danuser a judgment in 2012 against IDA and Jim Leach after finding Danuser was wrongfully terminated and Leach breached a fiduciary duty to Danuser. In January 2014, Danuser filed the judgment against Jim Leach in Arizona and Jim Leach objected to the filing of the foreign judgment. SNAPS became involved in the Arizona proceeding after Danuser assigned the judgment to SNAPS and IDA.

[¶ 31] The Arizona court ruled SNAPS and IDA were "prohibited from domesticating and executing on the Judgment against Leach in State of Arizona." The court ruled both A.R.S. § 12–2501(C) and N.D.C.C. § 32–38–01(3) prohibit contribution between intentional joint tortfeasors; therefore, allowing IDA to obtain contribution from Leach, its co-intentional joint tortfeasor, was prohibited. The court also ruled SNAPS exercised total control over the management and activities of IDA and was the alter ego of IDA. The court ordered the Danuser judgment was "unenforceable by SNAPS [and IDA] against Leach in State of Arizona."

[¶ 32] SNAPS sued Jim Leach, Steve Leach, and the other IDA shareholders in North Dakota in December 2014, alleging they breached the parties' stock purchase agreement. SNAPS alleged it paid Danuser over $100,000, and the selling shareholders breached the agreement because SNAPS was obligated to pay Danuser the first $100,000 and the sellers were responsible for the excess.

[¶ 33] The district court concluded res judicata barred SNAPS' claims against Jim Leach and Steve Leach:

> Here, the issues and the parties, Jim and Steve, were the same in the Arizona action and the North Dakota action. In both actions, it was SNAPS attempting to collect on the Danuser judgment against Jim and Steve. The Stock Purchase Agreement was raised or could have been raised in the Arizona proceeding.
>
> . . . .
>
> Therefore, the Court concludes that SNAPS' claims against Jim and Steve are barred by res judicata because of the Arizona decision on the identical issue.

[¶ 34] Contrary to the district court's ruling, SNAPS' lawsuit here was not an attempt to collect on the Danuser judgment. SNAPS sued to enforce the stock purchase agreement against Jim Leach, Elizabeth Leach, Steve Leach, and the other selling shareholders. The Arizona proceeding was limited to whether the Danuser judgment could be filed and enforced against Jim Leach in Arizona. Elizabeth Leach, Steve Leach, and the other selling shareholders were not involved in the Arizona proceeding, and the Arizona court specifically limited its ruling to the State of Arizona. The order issued in Arizona states SNAPS is "prohibited from domesticating and executing on the Judgment against Leach in State of Arizona." Jim and Steve Leach have not cited and we have not found any authority allowing additional claims against additional parties in a proceeding relating to the filing of a foreign judgment. We conclude the proceeding in Arizona relating to the filing of

the Danuser judgment and SNAPS' lawsuit in North Dakota relating to the stock purchase agreement are based on different factual circumstances. SNAPS' claims under the stock purchase agreement against Jim Leach and Steve Leach are not barred by res judicata. We reverse and remand that part of the district court's order granting summary judgment in favor of Jim Leach and Steve Leach. We also reverse and remand that part of the judgment dismissing SNAPS' claims against Jim Leach and Steve Leach.

## V

▮ [¶ 35] Jim Leach and Elizabeth Leach argue the district court erred in allowing SNAPS a recoupment of its obligation to pay the remaining balance due under the promissory note. They argue SNAPS breached the stock purchase agreement by failing to pay the remaining balance due under the note.

[¶ 36] This Court discussed the equitable doctrine of recoupment in *Minex Resources, Inc. v. Morland*, 467 N.W.2d 691, 699 (N.D. 1991):

> Recoupment is an equitable doctrine with its own unique characteristics: it must arise out of the same transaction that is the subject matter of the plaintiff's action and it can only be used to reduce or avoid the plaintiff's recovery. It is not a weapon of offense. Recoupment cannot be used to obtain affirmative relief. Recoupment differs from a counterclaim, which may arise out of a separate transaction and allows for affirmative relief and recovery in excess of that sought by the plaintiff, and from a setoff, which involves a transaction unrelated to the plaintiff's action. Recoupment is purely defensive.

(Citations omitted.)

[¶ 37] Here, the district court found that after Jim Leach refused to pay the Danuser judgment, SNAPS stopped making pay-ments under the promissory note referenced in the stock purchase agreement. The court found SNAPS owed $277,500 under the note. The court found SNAPS paid Danuser $619,108, and after deducting SNAPS' $100,000 obligation under the stock purchase agreement, awarded SNAPS damages of $519,108 resulting from the shareholders' breach of the agreement. The court further reduced SNAPS' damages by $277,500 as a defensive recoupment of its obligation to pay the remaining balance under the promissory note.

▮ [¶ 38] Recoupment must arise from the same transaction relating to the subject matter of the plaintiff's action and can only be used to reduce or avoid the plaintiff's recovery. *Minex*, 467 N.W.2d at 699. The subject matter of SNAPS' lawsuit is the parties' rights and responsibilities under the stock purchase agreement. The recoupment of SNAPS' obligation to pay the remaining balance under the promissory note reduced SNAPS' recovery. We conclude the district court did not err in granting SNAPS a recoupment of its obligation under the promissory note.

## VI

[¶ 39] We have considered the parties' remaining arguments and conclude they are either unnecessary to our decision or without merit. The judgment is affirmed in part, reversed in part, and remanded for further proceedings.

[¶ 40] Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Gerald W. VandeWalle, C.J.