2017 ND 232

In the MATTER OF the JOHN T. GASSMANN GST TRUST

Bell Bank, f/k/a Bell State Bank & Trust, as Trustee of the John T. Gassmann GST Trust, Petitioner and Appellee

v.

Margaret A. Oakland, Respondent and Appellant

No. 20170033

Supreme Court of North Dakota.

Filed 10/3/2017

See also 840 N.W.2d 88 and 867 N.W.2d 325.

Berly D. Nelson (argued) and Ian McLean (appeared), Fargo, N.D., for petitioner and appellee.

Margaret A. Oakland, Valley City, N.D., self-represented, respondent and appellant.

Tufte, Justice.

[¶ 1] Margaret Oakland appeals a district court order granting Bell Bank's petition to approve the accounting, distribution, and termination of the John T. Gassmann generation-skipping trust. She also appeals from an order denying her motion for relief from the order approving Bell Bank's petition. Oakland argues that Gassmann improperly exercised a special power of appointment over the trust estate and that Bell Bank breached its fiduciary duty of impartiality. We affirm.

I

[¶ 2] John T. Gassmann died in February 2012. Oakland is his only child. Under a generation-skipping trust created by his parents, Gassmann had a special power of appointment over the trust estate, which included family farmland. The power was exercisable "by appointment, outright or in trust, in such portions as my child may appoint in a valid testamentary instrument that specifically refers to this special power of appointment." The trust prohibited Gassmann from exercising the power in favor of himself, his estate, his creditors, or creditors of his estate. The generation-

skipping trust provided that unless Gassmann exercised the power of appointment in a valid testamentary instrument, all trust assets would pass to Gassmann's descendants at Gassmann's death.

[¶ 3] Gassmann exercised the special power of appointment through both his will and revocable living trust executed in 2011. Gassmann exercised his special power of appointment by distributing all of the real estate in his generation-skipping trust to the Valley Township Land Trust ("land trust") and the residue of the trust estate to the Canadian Mineral Share Trust ("mineral trust"), which were both created under Gassmann's revocable living trust. Oakland is a primary beneficiary of the mineral trust. She is not a beneficiary of the land trust.

[¶ 4] After Gassmann's death, Oakland contested his will and revocable living trust. Oakland argued Gassmann's will was invalid, alleging he executed the will under an insane delusion. *Estate of Gassmann*, 2015 ND 188, ¶ 6, 867 N.W.2d 325. Oakland's challenges were denied and the denials affirmed on appeal. *See Gassmann*, at ¶ 24; *Oakland v. Bowman*, 2013 ND 217, ¶ 12, 840 N.W.2d 88.

[¶ 5] Bell Bank, as trustee of the John T. Gassmann generation-skipping trust, petitioned the district court to approve the accounting and to order the distribution and termination of the trust. Bell Bank requested to sell the assets to be distributed to the mineral trust to partially satisfy the liabilities of the generation-skipping trust. Oakland filed a response to the petition the evening before the hearing, arguing her father's exercise of the special power of appointment was invalid. She also argued Bell Bank breached its fiduciary duties as trustee of the generation-skipping trust. After a hearing, the court dismissed Oakland's objections and granted Bell Bank's petition. Following the order

approving Bell Bank's petition, Oakland moved to alter or amend the findings and requested relief from the order. The court denied her motion.

## II

[¶ 6] Oakland argues Gassmann's exercise of the special power of appointment was invalid because he appointed trust assets to other trusts that were accessible to pay expenses and debts of his estate or claims against his estate. She argues the exercise of the power made trust assets available to Gassmann's estate and creditors of the estate in violation of the generation-skipping trust's provisions.

[¶ 7] In response, Bell Bank argues Oakland could have raised the effectiveness of her father's exercise of his special power of appointment in her earlier lawsuits, and res judicata bars her from rearguing that issue in this appeal. Bell Bank argued Oakland was barred from arguing this issue at the hearing on its petition to terminate the generation-skipping trust:

What she's trying to argue is that [the power of appointment] was somehow improperly done. A, she should have raised that before. She didn't. She's waived it. All right. Effectively, what she wants to do, your Honor, is she wants this to be the fourth lawsuit now. She wants another bite at the apple. Your Honor, this is one of these situations where unfortunately it[']s become a situation where if I can't have [the farmland], I don't want anybody to have it.

[¶ 8] Res judicata precludes courts from relitigating claims in order to promote finality of judgments, which avoids multiple litigation, wasteful delay, and expense and conserves judicial resources. *SNAPS Holding Co. v. Leach*, 2017 ND 140, ¶ 28, 895 N.W.2d 763. "Res judicata prevents the 'relitigation of claims

that were raised, or could have been raised, in prior actions between the same parties or their privies.' " *Id.* (quoting *Lucas v. Porter*, 2008 ND 160, ¶ 16, 755 N.W.2d 88). Res judicata applies to subsequent claims based on the same underlying facts even if the subsequent claims are based on different legal theories. *SNAPS*, at ¶ 28. "The application of res judicata is a question of law, fully reviewable on appeal." *Id.*

[¶ 9] We agree with Bell Bank that res judicata precludes Oakland's argument that Gassmann improperly exercised his special power of appointment. Gassmann exercised the power of appointment in his will by appointing the trust assets to the land trust and mineral trust. In Oakland's objection to the probate of Gassmann's will, she challenged the will as a whole, arguing he executed the will under an insane delusion. *Gassmann*, 2015 ND 188, ¶ 6, 867 N.W.2d 325. Oakland did not specifically challenge Gassmann's exercise of the power of appointment when she challenged Gassmann's will. This Court affirmed the judgment dismissing Oakland's objection to the probate of Gassmann's will after a jury found she failed to establish he executed the will while under an insane delusion. *Id.* at ¶¶ 1, 24. Because Gassmann exercised the special power of appointment in his will, Oakland's argument that he improperly exercised that power could have and should have been raised as part of her challenge to Gassmann's will. We conclude res judicata bars Oakland from raising that argument in this action.

## III

[¶ 10] Oakland argues Bell Bank, as trustee of the generation-skipping trust, breached its fiduciary duty of impartiality to her as a beneficiary of the mineral trust by requesting to sell the assets to be distributed to the mineral trust to partially satisfy the liabilities of the generation-skipping trust. Oakland argues it would be inequitable to liquidate the assets that were to be distributed to the mineral trust.

[¶ 11] Whether a person has breached a fiduciary duty is a finding of fact that we review under the clearly erroneous standard of N.D.R.Civ.P. 52(a). *Red River Wings, Inc. v. Hoot, Inc.*, 2008 ND 117, ¶ 28, 751 N.W.2d 206. A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if it is induced by an erroneous view of the law, if no evidence supports the finding, or if, after reviewing all the evidence, this Court is left with a definite and firm conviction a mistake has been made. *Red River Wings*, at ¶ 28. A court's findings of fact must reflect the basis of its decision and enable this Court to understand its reasoning. *Carlson v. Carlson*, 2011 ND 168, ¶ 19, 802 N.W.2d 436. Findings of fact are adequate if they provide this Court with an understanding of the court's rationale used in reaching its decision. *State v. Horning*, 2016 ND 151, ¶ 8, 882 N.W.2d 247. Lack of specificity alone does not make findings of fact clearly erroneous. *Id.*

[¶ 12] Under N.D.C.C. § 59–16–03, a trustee owes a duty of impartiality to the trust's beneficiaries: "If a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests." "Although a trustee is under a duty to deal impartially with the beneficiaries of a trust, the trustee is also under a duty to protect and preserve the trust assets and to defend actions which may result in loss to the trust, unless under all of the circumstances it is reasonable not to make such defense." *North Dakota Pub. Serv. Comm'n v. Valley Farmers Bean Ass'n*, 365 N.W.2d 528, 536 (N.D. 1985) (citations omitted). "The duty to act impar-

tially does not mean that the trustee must treat the beneficiaries equally. Rather, the trustee must treat the beneficiaries equitably in light of the purposes and terms of the trust." *Unif. Trust Code* § 803, cmt. (Unif. Law Comm'n 2000).

[¶ 13] In Gassmann's will, he exercised the special power of appointment by distributing the assets of the generation-skipping trust into two trusts, a land trust and a mineral trust. Real estate, including farmland, was to be distributed to the land trust. The residue of the generation-skipping trust was to be distributed to the mineral trust. Oakland and several religious organizations were primary beneficiaries of the mineral trust. She was not a beneficiary of the land trust.

[¶ 14] In its petition to approve the accounting, distribution, and termination of Gassmann's generation-skipping trust, Bell Bank indicated the trust loaned $250,000 to Gassmann's estate to pay the administrative costs of the proceedings brought by Oakland. Bell Bank also stated the generation-skipping trust borrowed $125,000 from Bell Bank to pay administrative expenses incurred in Oakland's litigation against Gassmann's revocable living trust. Bell Bank requested approval to sell the assets to be distributed to the mineral trust "to pay the outstanding liabilities and final administrative expenses of the [generation-skipping] Trust":

> Since Margaret Oakland is the primary beneficiary of the Canadian Mineral Share Trust, it is fair and equitable to liquidate the Canadian mineral stock to pay the outstanding liabilities of the [generation-skipping] Trust that were incurred due to her actions.
>
> The current value of the Canadian mineral stock is approximately $47,674.00. Thus, liquidating all the Ca-

nadian mineral stock will not satisfy the liabilities of the [generation-skipping] Trust. Because all of the funds from the sale of the Canadian mineral stock will be exhausted by partially paying the current liabilities of the [generation-skipping] Trust, there will be no remaining funds to distribute to the Canadian Mineral Share Trust.

[¶ 15] In her response to Bell Bank's petition, Oakland argued it would be inequitable to liquidate the assets that were to be distributed to the mineral trust. She argued that liquidation of the mineral trust to pay outstanding debts would impose a greater burden on her and the other mineral trust beneficiaries relative to the burden imposed on the other generation-skipping trust beneficiaries.[1] She argued it would be inequitable "to penalize her for pursuing her rights appropriately and in good faith as she did in the aforementioned proceedings and litigation [against Gassmann's estate]."

[¶ 16] At the hearing on Bell Bank's petition, the litigation expenses incurred in defending Oakland's litigation against Gassmann's estate and revocable living trust were discussed extensively:

> THE COURT: So there's attorney's fees that the trust has to pay?
>
> MR. NELSON: Yes. And other liabilities as well, your Honor. And ... the GST Trust, also has the loan that it has made to the estate, because the bulk of the assets making up the GST Trust are the farmland, which was the subject of the litigation, and, you know, effectively passing through the estate via the power of appointment. And so clearly there was a substantial benefit for the GST Trust in defending that in litigation.

---

1. Although there are additional primary beneficiaries of the mineral trust, they are not parties to this action and Oakland does not have standing to argue their respective interests.

THE COURT: So with respect to the mineral shares, the effect of—effectively what we're seeking here today since the objecting party is Ms. Oakland is you want to sell those shares to pay for the administrative expenses of the trust.

MR. NELSON: That's correct, your Honor. It's not going to satisfy the liabilities of the GST Trust, but we are asking that we be able to liquidate that.

THE COURT: Ms. Oakland, as I understand their position is that they have racked up six figures of attorney's fees and expenses as a result of litigation in the trust matter followed by the probate case followed by a second trust litigation. And I know Judge Hovey had the original trust, Judge Greenwood had the original probate matter, both of those were appealed; is that correct?

MS. OAKLAND: Yes, your Honor.

THE COURT: And then we had the case that you filed seeking declaratory judgment which I had and that became moot based on the ruling of the supreme court in those two preceding cases, because at that point the issue of whether the appointment power under the trust constituted a testamentary power became moot because it was exercised under the will. Am I correct as my recollection of those cases?

MR. NELSON: Yes, your Honor. And that was also appealed as well, but the appeal was dismissed after the supreme court—

THE COURT: So Ms. Oakland, the question to you is they're saying there's $47,000 in assets that you may have some interest in, and they're saying based on the amount of litigation that you have pursued that they have spent three and four and five times that amount of money litigating all these different cases, what is your objection to their using whatever amount of money is left in that mineral share trust to pay a small share of the expenses they've incurred as a result of all this litigation?

. . . .

THE COURT: I cannot see how you have a valid objection to that [selling the mineral trust assets] based on the facts as they've been presented, which you can't really dispute. I mean, they have these huge obligations that have to be paid.

MS. OAKLAND: I do dispute the attribution of those expenses being my fault, per se. They [Bell Bank] were not forced to borrow money. They chose to continue fighting, continue fighting, continue fighting on this probate matter. They could have settled it.

THE COURT: So what they were supposed to do is even if they believed your claim against the estate, or your arguments that the will was invalid, and apparently based on the jury verdict and the supreme court's ruling they were legally and factually justified to say, they should have settled?

MS. OAKLAND: I think if an individual gets to a point where they don't have money to continue litigating the matter and they run up, you know, take credit out to keep doing it and end up defaulting, that's not generally considered prudent behavior. And in this case, they were doing it with somebody else's assets, somebody else's money.

THE COURT: And they can look at it the other way and say you would not give up even after it was known to you that you couldn't win?

MS. OAKLAND: I think by the time it was known to me that I couldn't win, the debt, which was accrued primarily relative to that probate case—

THE COURT: I can't say that the trustee and the personal representative of

the estate had an obligation to give in to a claim they did not consider to be valid, that their obligation is to defend their trustor's and their testator's will. That's their obligation.

The district court concluded the hearing by stating:

Ms. Oakland, I'm just going to terminate on this thought. You made some choices and now those choices are going to have their natural outcome. The estate and the trust is essentially insolvent. And they're going to have to use their assets to pay out what they can, distribute it, whatever is left, and this needs to come to an end. There's nothing left to fight about. It has been fought by the numbers of the cases at least four years, probably longer for all I know. But it is over.

[¶ 17] In its order approving the distribution and termination of the generation-skipping trust, the district court found the generation-skipping trust loaned $250,000 to Gassmann's estate as a result of Oakland's litigation against the estate. The court also indicated Oakland challenged Gassmann's revocable living trust in two separate proceedings and found Bell Bank loaned Gassmann's generation-skipping trust $125,000 "to fully fund the administrative expenses incurred in the probate and trust proceedings." The court found liquidation of the assets to be distributed to the mineral trust would partially satisfy the outstanding liabilities of the generation-skipping trust. The court found the real estate to be distributed to the land trust would be subject to the remaining liabilities of the generation-skipping trust.

[¶ 18] The district court did not make any specific findings in its order on whether Bell Bank breached its duty of impartiality by requesting to sell the assets to be distributed to the mineral trust to partially satisfy the liabilities of the generation-skipping trust. Although the court made no specific findings on whether Bell Bank breached its duty of impartiality, the court implicitly found Bell Bank did not breach any fiduciary duties by approving its petition to distribute the assets and terminate Gassmann's generation-skipping trust. The court found the value of the assets to be distributed to the mineral trust, approximately $47,674, would partially satisfy the liabilities of the generation-skipping trust. The court found the beneficiaries of the land trust would be responsible for the remainder of the trust's liabilities, approximately $77,326 of the outstanding $125,000 loan from Bell Bank. There was also extensive discussion at the hearing relating to how the liabilities of Gassmann's estate and trust were incurred as a result of Oakland's litigation against the estate and trust. The court stated at the hearing that Bell Bank's "obligation is to defend their trustor's and their testator's will. That's their obligation [to protect trust assets]." *See North Dakota Pub. Serv. Comm'n v. Valley Farmers Bean Ass'n*, 365 N.W.2d at 536 (trustee has a duty to deal impartially with the beneficiaries of a trust; however, the trustee also has a duty to protect and preserve trust assets and defend actions that may result in loss to the trust). Under these circumstances, we conclude the court did not clearly err in approving Bell Bank's petition to approve the accounting, distribution, and termination of Gassmann's generation-skipping trust. We are able to understand the court's rationale used in reaching its decision and are not left with a definite and firm conviction a mistake has been made.

IV

[¶ 19] We have considered Oakland's remaining arguments and conclude they are either unnecessary to our decision or without merit. The orders are affirmed.

[¶ 20] Jerod E. Tufte

Lisa Fair McEvers

Daniel J. Crothers

Carol Ronning Kapsner, S.J.

Gerald W. VandeWalle, C.J.

[¶ 21] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Carol Ronning Kapsner, sitting.